(49 Misc. Rep. 65)

### CURRY v. EMPIRE LIFE INS. CO.

(Supreme Court, Trial Term, New York County. December, 1905.)

INSURANCE—PROVISIONS OF POLICY—WAIVER.

> That the beneficiary in a policy of insurance on the life of her husband was advised by a representative of the insurance company, two months after his death and after she had furnished proofs of loss, to take the policy with her to Mississippi, and that when it was approved she would receive her money, and that the company had three months to approve the policy, is not a waiver of the condition requiring action to be brought within six months after the death of the insured, where after the three months the company notified the beneficiary that the claim had not been approved and within five months disclaimed its liability.
>
> [Ed. Note.—For cases in point, see vol. 28, Cent. Dig. Insurance, § 1551.]

Action by Sallie A. Curry against the Empire Life Insurance Company. Complaint dismissed.

Francis G. Caffey, for plaintiff.

Blandy, Mooney & Shipman, for defendant.

COCHRANE, J. A serious question arises by reason of a discrepancy between the age of the assured as stated by him in his application for the policy and as stated by the plaintiff in the proof of death submitted to the defendant. A question is also raised by the defendant that the assured gave false answers as to his former condition of health and medical attendance. It is unnecessary to consider these questions, for

the reason that the action must fail because it was not brought until nine months after the death of the assured, whereas the policy requires that it should have been brought within six months thereafter. Plaintiff contends that the defendant has waived this provision of the contract and is estopped from asserting the same. I shall confine my discussion to this feature of the case.

The assured died September 20, 1902. Proof of death was submitted to the defendant October 10, 1902, which proof was accepted by the defendant as satisfactory. In the following month plaintiff saw a representative of the defendant, and stated to him that she was going to Mississippi, and asked him what she should do with her policy. He told her to take it along with her, and as soon as it was approved she would receive her money. He also stated:

"You have got plenty of time and all the time you want. We have—the company has—three months to approve it."

This statement of the defendant's representative must be given a reasonable construction. It would be folly to assert that he intended thereby to waive any provision of the contract, or that the plaintiff understood him to make any such waiver. Such a statement, made near the close of the six-months period, might have a very different effect than when made, as was this statement, near the beginning of such period. The entire conversation shows that all that was meant was that the absence of the plaintiff in a distant state would not interfere with the payment of the policy; that the policy would not become payable until three months from the time of the submission of the proof of death and that such period of three months would be "plenty of time and all the time you [meaning the plaintiff] want." At the time of this conversation, it was probably the expectation of both parties that the policy would be paid, and the conversation in question was not had in reference to any objection raised by the defendant to such payment. Such conversation did not mislead the plaintiff, as is manifest from the subsequent history of events.

Plaintiff thereupon went to a distant state and remained there. Immediately after the expiration of the three months after the submission of the proof of death, and in response to a letter from the plaintiff, defendant wrote to her stating that her claim had not been approved because of the discrepancy in the age of the assured above alluded to, and because of his statement as to his physical condition, and concluding as follows:

"Some disposition of the matter however will be made very shortly and you will be duly notified of our Executive's action."

On February 2, 1903, in response to another inquiry of the plaintiff, the defendant again wrote her as follows:

"Your favor of the 19th ult. duly received; but, as I wrote you a short time ago, your claim arising through the death of your late husband has not been approved. The company, however, will probably meet this matter half way, in other words, will allow $2,500, in settlement of your claim, not that the company considers you have any rights under the policy by reason of the misrepresentations in the application, but simply to avoid the annoyances incident to a long and possibly vexatious lawsuit, and also for the reason that he had been a member of the company for some time, and we feel disposed to treat the matter in a fair and amicable way."

This letter contained a complete disclaimer of liability on the part of the defendant. There was no equivocation or doubt as to its attitude. The defendant definitely announced its position. It fully and fairly apprised the plaintiff of its contention that it was not liable. It suggested a compromise, not because of any liability, but simply to avoid litigation, and distinctly placed the suggestion of compromise on that ground. And the correspondence ceased with that letter. Plaintiff was not misled. She fully understood the attitude assumed by the defendant and conducted herself accordingly; for she thereupon placed her claim in the hands of an attorney in Birmingham, Ala., who was also her brother-in-law.

On the 4th of March, 1903, 16 days before the expiration of the 6 months, this attorney's law firm wrote to the defendant, stating that they had been employed by the plaintiff to collect the policy and that they desired to ascertain if the defendant cared to settle amicably. This letter was not a continuation of the old correspondence. It was not called for by anything which the defendant had previously written. The status of the respective parties had been fixed by the defendant's prior letter to plaintiff of February 2d. Had the plaintiff or her attorneys pursued the subject of compromise suggested by the defendant in its letter of February 2d, and had the correspondence between the parties proceeded on those lines, a different question might arise. But the matter was apparently dropped after that letter. And the letter on March 4th was written by plaintiff's attorneys of their own volition, and not as a result of anything which had previously been said or written by the defendant. On March 7th the defendant acknowledged the receipt of the letter of March 4th from the plaintiff's attorneys, saying that their representative who had the matter in charge was out of the city, and that on his return such matter would be taken up, and that the plaintiff's attorneys would be communicated with relative thereto. March 10th the defendant made a definite answer to the letter of the plaintiff's attorneys of March 4th, stating its objections to the claim as it had previously stated such objections in a prior letter to the plaintiff, and renewing its suggestion of a compromise; disclaiming, however, all liability, and placing such suggestion of a compromise, as before, on the desire to avoid litigation. This letter left the matter precisely where it had been left by the defendant's letter to the plaintiff of February 2d. It contained no new suggestions and invited no further correspondence. On March 13th, one week before the expiration of the time for instituting the action, plaintiff's attorneys again wrote the defendant, stating that they would "institute suit at once unless the full amount of the policy is paid." No answer was made to this letter, and the action was not instituted until June 20, 1903, more than three months thereafter, and without any effort in the meantime to institute such action.

It will be observed that every letter written by the defendant was in answer to one written either by the plaintiff or her attorneys. The defendant did not seek or encourage any correspondence. It was under no obligation to reply to the letter of March 13th, of the plaintiff's attorneys. It had on two previous occasions definitely announced its position. The plaintiff surely could not procure an extension of

time simply by writing to the defendant a few days before the expiration of such time as was done in this case. The reply of the defendant to the letter of March 4th, was made within a reasonable time. It did not mislead the plaintiff's attorneys or lull them into a feeling of security that the defendant would comply with their demands and pay the claim in full. If, as above stated, these attorneys had acceded to the defendant's suggestion of a compromise, the question might be different. Nor can it be said that the mere suggestion of a compromise, which was all that was made in this case by the defendant, deprives it of a part of its contract provisions. If that were the case, it would be dangerous for a defendant, in a matter of this kind, to attempt to compromise. All that passed between the parties, by letter or otherwise, can scarcely be characterized as negotiations for payment or settlement. But, even if it can be so characterized, "the mere pendency of negotiations or the fact that occasional interviews are had in regard to the adjustment or settlement of a loss 'will not of themselves operate as a waiver of the stipulation or be an equitable estoppel.'" Allen v. Dutchess County Mut. Ins. Co., 95 App. Div. 86, 89, 88 N. Y. Supp. 530, 532. The following cases cited by the plaintiff are not helpful:

In Robinson v. Metropolitan Life Ins. Co., 1 App. Div. 269, 37 N. Y. Supp. 146, the defendant retained the policy, and the plaintiff, who was an ignorant man, had no knowledge of the provision in question. The court said:

"To keep this policy and then refuse to pay, on the ground of lapse of time, would operate as a fraud."

In Magner v. Mutual Life Ass'n, 17 App. Div. 13, 44 N. Y. Supp. 862, the defendant wrote to the beneficiary that her claim would be considered on a certain date, and was therefore under obligation to inform her of the result of such consideration. It did not give her such information until three days before the expiration of the six-months period. The action was begun promptly and within four days after the expiration of said six-months period. Here the action was not commenced until three months after the time limit had expired. No effort was made, in the meantime, to commence the action. Plaintiff, it is true, was in a distant state; but the matter was in the hands of her attorneys, and her presence within this state was not essential for the commencement of the action.

In Bowen v. Preferred Accident Ins. Co., 82 App. Div. 458, 81 N. Y. Supp. 840, the matter had been under consultation and negotiation until after the time limit had expired, and thereafter the defendant's counsel informed plaintiff's attorney, who, pending negotiations, was about to leave the locality, that the matter could remain until he returned; and this was held to be inconsistent with the intention to assert that "the claim whose merits were still under advisement had been lost by the length of time devoted by the parties to its consideration." The cases thus referred to are clearly distinguishable from the one now under consideration.

In Walker v. Phœnix Ins. Co., 156 N. Y. 633, 51 N. E. 394, the principle of waiver and estoppel is stated as follows:

"While express waiver rests upon intention, and estoppel upon misleading conduct, implied waiver may rest upon either; for it exists when there is an intention to waive unexpressed, but clearly to be inferred from circumstances, or when there is no such intention in fact, but the conduct of the insurer has misled the insured into acting on a reasonable belief that the company has waived some provision of the policy. * * * While the principle may not be easily classified, it is well established that, if the words and acts of the insurer reasonably justify the conclusion that with full knowledge of all the facts it intended to 'abandon or not to insist upon the particular defense afterward relied upon,' a verdict or finding to that effect establishes a waiver, which, if it once exists, can never be revoked."

The rule as above stated is probably as strong in favor of plaintiff as can be desired; but, applying it to this case, I can find nothing here indicating either a waiver or an estoppel.

Plaintiff also refers to a conversation between herself and the defendant's representative in June, 1903, just prior to the commencement of the action. That conversation had reference to two policies in different companies. The defendant's representative said, evidently referring to both policies, that they had not been approved on account of "certain conditions." As he did not specify what the "conditions" were, it cannot be inferred that he intended to abandon any defense afforded by the policy.

I am aware that the courts are reluctant to facilitate such a defense as this; but it seems to me that this is clearly a case where the plaintiff has slumbered on her rights, apparently quite oblivious to the provision of the contract requiring the action to be brought within six months. I find that the defendant has not waived such provision and is not estopped from asserting the same.

Complaint dismissed.