## REYNOLDS v. DETROIT FIDELITY & SURETY CO.

Circuit Court of Appeals, Sixth Circuit.
May 13, 1927.

No. 4756.

1. Insurance ☞623(1)—Surety did not waive provision limiting time for suit on policy by correspondence not indicating loss would be paid.

In action on surety bond to reimburse employer for losses sustained by larceny or embezzlement by employés, surety *held* not to have waived provision of policy requiring suit or action to be commenced within 12 months after discovering larceny or embezzlement by communications with receiver for employer in regard to claim, but not indicating that surety either expressly or impliedly agreed that loss would be paid, and constituting only delay on part of surety in announcing its action.

2. Estoppel ☞116—Party claiming waiver has burden of proof.

Burden of proof is on party claiming waiver.

3. Estoppel ☞52—Waiver, in absence of conduct creating estoppel must be supported by agreement founded on valuable consideration.

In absence of conduct creating an estoppel a waiver must be supported by an agreement founded on valuable consideration.

4. Estoppel ☞52—There can be no waiver unless intended and understood, but when party acts so as to mislead another he is estopped thereby.

There can be no waiver unless so intended by one party and so understood by the other, but when party has so acted as to mislead the other he is estopped thereby.

5. Insurance ☞623(3)—If surety caused delay by its conduct, it waived provision requiring suit within one year from discovering loss.

If surety on policy, insuring employer against larceny or embezzlement by employé, by its conduct misled receiver for employer, and held out reasonable hopes of adjustment, which was cause of receiver's delay in commencing suit, such conduct would constitute a waiver of provision of policy requiring action within one year from discovering embezzlement.

In Error to the District Court of the United States for the Eastern Division of the Southern District of Ohio; Benson W. Hough, Judge.

Action by Dana F. Reynolds, receiver of the Ohio Industrial Endowment Fund Company, against the Detroit Fidelity & Surety Company. Judgment for defendant, and plaintiff brings error. Affirmed.

B. W. Waltermire and Dana F. Reynolds, both of Columbus, Ohio (Frederick N. Sinks, of Columbus, Ohio, on the brief), for plaintiff in error.

James I. Boulger and William R. Pomerene, both of Columbus, Ohio, for defendant in error.

Before DENISON, MOORMAN, and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge. On September 1, 1923, defendant in error (referred to herein as the "surety") duly issued to the Ohio Industrial Endowment Fund Company (later referred to as the "employer") a bond to reimburse that company, within a limited amount stated in the bond, for such pecuniary losses as the latter might sustain during one year then next ensuing by any act of larceny or embezzlement of money, securities, or other personal property of the employer, or in the employer's possession, and for which the employer might be legally liable, committed by any of its employees named in the schedule attached to the bond, including its then vice president, one Josephson, who was its general manager. The bond contained three specific provisions as conditions precedent to recovery thereon: (1) That "the employer, on its becoming aware of any act which may be made the basis of any claim hereunder, shall immediately give the surety notice thereof in writing, by a registered letter addressed to [the defendant in error at its address in Detroit, Mich.]"; (2) that the employer "shall, within 90 days after it has so become aware of such act as aforesaid, file with the surety its itemized claim hereunder at its own cost and expense, with full particulars therein duly sworn to"; (3) "no suit or action of any kind against the surety for the recovery of a claim under this bond shall be sustainable, unless the suit is commenced and the process served within the term of 12 months after the first discovery of any act of larceny or embezzlement as aforesaid."

On a trial by jury of an action brought on the bond there was ample and undisputed evidence of larceny and embezzlement by Josephson within the one-year term of the bond (and before notice to the surety of his defalcation) of an aggregate amount more than the penalty therein relating to him, viz. $10,000. At the close of the trial the surety moved for direction of verdict in its favor, by reason of the employer's asserted noncompliance with *each* of the three conditions precedent to recovery heretofore enumerated. The trial judge thought that the evidence presented a question of fact as to the time of performance of conditions 1 and 2, and instructed a verdict for the surety for noncompliance with the third condition. The sole question on this review concerns the propriety of such directed verdict.

Turning to the ground on which verdict was directed: An exact determination of the date of the employer's first discovery of any act of larceny or embezzlement is perhaps not easy. The bond provides that, "if the employer be a corporation [which is the case here], * * * the acts or knowledge of the president, treasurer, secretary, cashier, or any officer or director of the corporation, shall be the acts or knowledge of the employer within the meaning hereof."

The suspicions, at least, of some of the officers and directors, date as early as April, 1924. But it would seem entirely fair to the employer (perhaps not to the surety) to adopt July 8, 1924, on which date the board of directors of the employer company received the report of two of its officers or directors, or both, in which various defalcations by Josephson were enumerated. Among other things, the report stated: "Inasmuch as Mr. Josephson was under bond to the company, this company should be called upon to make good to the amount of their bond for any losses sustained by the company through Mr. Josephson." [1] However, on July 15, 1924, the director of commerce of the state of Ohio had insisted that a charge of embezzlement be placed against Josephson, and on July 16, 1924, a receiver was appointed, and six days later gave the surety notice of the claim of Josephson's defalcation.

Counsel for the receiver contend that the directors can not be charged with notice of embezzlement until July 15th; but in construing

_____

[1] The employer's auditor testified that he and the director who prepared the report "first satisfied themselves that there was enough evidence to charge Josephson with embezzling and stealing funds of the [employer company] about the first part of July."

the one-year limitation branch it is not important which of these two dates is taken, as suit was not begun until September 4, 1925. The receiver, while admitting that this action was not brought within 12 months after the discovery of any act of larceny or embezzlement by Josephson, seeks to avoid the bar thus otherwise created by asserting that by reason of the acts of the surety in reference to the claim for reimbursement, the terms of the bond limiting the right to sue within 12 months "were waived or suspended." [2]

As to this branch of the subject, the disposition of this review must turn on the validity or invalidity of the receiver's claim above stated, which is predicated upon the following facts: The receiver's first notice of claim of Josephson's defalcation was given the surety on July 22, 1924. The itemized claim, supported by affidavit, was furnished October 10, 1924. Receipt thereof was acknowledged by the surety by letter dated October 14, 1924, with the statement: "As soon as we have time to thoroughly digest this report, we will advise you further with reference thereto." The receiver, by letter dated November 19, 1924, after referring to his letter of October 10th, and the reply thereto of October 14th, said: "When may we expect to have further word from you with reference to this matter?" The surety, by letter of November 21, 1924, after acknowledging the receiver's communication of November 19th, said: "In reply, please be advised that this claim has been referred to Booth, Keating, Pomerene & Boulger, attorneys, Huntington Building, your city, for investigation. We have not received any report as yet from them, and assume that, on account of the rather complicated state of affairs surrounding the Ohio Industrial Endowment Fund Company, their investigation is progressing as rapidly as possible. Immediately upon receipt of their advices with reference to your claim filed under date of October 10, we will be glad to communicate further with you. Hoping this is entirely satisfactory, we are," etc.

Counsel for the respective parties stipulated in writing as follows: "That on or about the 7th day of July, 1925, Mr. Sinks, counsel for the receiver, called upon Mr. Pomerene as counsel for the surety company, and asked him what the surety company proposed as to the payment or settlement of the claim of the receiver of the Ohio Industrial Endowment Fund Company. Mr. Pomerene said he did not know that Mr. Josephson had embezzled anything, and asked for specifications as they then claimed them to be, as Mr. Pomerene further stated there had been many developments since the original arrest of Josephson, and he did not know what the receiver then claimed; that thereupon, to wit, on July 10, a copy of the specifications were mailed Mr. Pomerene, which he received on the 11th day of July, and found them to be the same as those which had originally been sent to the surety company."

Attorneys for the receiver, by letter of July 24, 1925, addressed to the Fidelity Company (the year had then elapsed), after stating that the receiver had written the latter several times in reference to the claim, that the last communication in reply was under date of November 21, 1924, and its nature, the furnishing of specifications of the defalcations, the fact that there were many other defalcations by Josephson, and the latter's indictment and conviction in an Ohio state court, for the embezzlement of $89,000, concluded thus: "It seems to us that you should make prompt settlement of this claim without further controversy, and the purpose of this letter is to advise you that unless prompt settlement is made we shall be obliged, on behalf of the receiver, to bring suit upon this claim. We trust that this will not be necessary. Please let us hear from you." To this letter the superintendent of the surety's claim department replied, under date of July 30, 1925: "The company takes the position that there is no liability against it on this surety bond, and therefore respectfully declines to make the payment you demand on it."

This suit was begun September 4, 1925, which was 1 year 1 month and 15 days after the giving of the receiver's actual notice of the claim for reimbursement. The crucial question is whether these acts of the surety company amount to a waiver or suspension by it of the provisions of the indemnity bond, limiting the period for suit to 12 months "after the first discovery of any act of larceny or embezzlement."

[1] We think this question must be answered in the negative. In Harvey v. Fidelity, etc., Co., 200 F. 925, 928, this court held that reasonable provisions in an insurance policy limiting the time for suit thereon are

---

[2] It is thus unnecessary to consider whether there is any difference in meaning between "discovered" and "becoming aware." See Guarantee Co. v. Mechanics', etc., Co., 183 U. S. 402, 420, 22 S. Ct. 124, 46 L. Ed. 253.

valid, and, unless waived, are binding upon the parties. In that case the period of limitation was six months. The principle stated is supported by numerous authorities. [2-4] The burden of proof is upon the party claiming a waiver to prove it. * * * In the absence of conduct creating an estoppel, a waiver must be supported by an agreement founded upon a valuable consideration. There can be no waiver unless so intended by one party and so understood by the other, but when a party has so acted as to mislead the other he is estopped thereby. 40 Cyc. 261; Hasler v. West India S. S. Co. (C. C. A. 2) 212 F. 862, 867.

The immateriality of a warranty or of a condition precedent made by the agreement of the parties, and the innocuousness of a failure to perform it, do not nullify or mitigate the fatal effect of such a failure prescribed by their agreement. Nat. Surety Co. v. Long (C. C. A. 8) 125 F. 887, 889. For cases applying the general rule above stated to limitations contained in bills of lading under the Carmack Amendment (Comp. St. §§ 8604a, 8604aa), see St. Paul, I. M. & S. Ry. Co. v. Starbird, 243 U. S. 592, 37 S. Ct. 462, 61 L. Ed. 917.

[5] Coming to the merits of the defense of waiver: Counsel for the receiver contends that if the surety's conduct has been such as to mislead the receiver, or to throw him off his guard and lull him into a false security, or if it has held out to the receiver reasonable hopes of adjustment, or leaves the question of adjustment an open one, or induces delay in bringing suit to enable it to investigate the claim, a waiver may be effected. This is a correct proposition, provided such action is the cause of delay in commencing suit. Philadelphia Co. v. Thacher (C. C. A. 1) 236 F. 869;[3] United States v. Fidelity & Deposit Co. (C. C. A. 2)

224 F. 866, 869;[4] Green Star v. Nanyang, (C. C. A. 9) 3 F.(2d) 369, 371;[5] Lynchburg v. Travelers' Insurance Co. (C. C. A. 4) 149 F. 954, 9 L. R. A. (N. S) 654.[6]

We are unable, however, to find in the record before us evidence substantially tending to show that the surety's conduct misled the receiver or threw him off his guard, or held out to that officer reasonable hopes of adjustment, thereby inducing delay in bringing suit; nor do we find anything which we think can properly be termed a request for additional evidence or any participation in negotiations for settlement, or even any evidence that negotiations therefor were pending, even assuming that on July 7th the one-year limitation had expired. In any event, the time to sue was nearly, if not completely, gone. If, however, the receiver had given prompt notice of the claimed defalcation, he would still have had a week or more in which to bring suit.

We find nothing in the correspondence or interviews between counsel indicating that the surety gave any assurance, express or implied, that the loss would be paid. We think that what happened was no more than delay on the part of the surety in announcing its action, which the receiver could at any time have ended by commencing suit, and without thereby violating any agreement or propriety, or even courtesy. We think the weight of authority clearly op-

---

[3] In the Thacher Case plaintiff made claim for a loss on account of a bankruptcy. Defendant stated that it was impossible at that time to ascertain whether any loss would be suffered, and that should loss occur on final determination of the bankruptcy proceedings the matter would be adjusted. After other correspondence plaintiff proposed arbitration and referred the matter to its counsel, who wrote defendant, mentioning the trouble and expense of arbitration, and suggesting that as time would determine the exact amount of the loss the parties should simply await the result of the bankruptcy proceedings. Defendant replied agreeing with the suggestion that it was better to let the matter take its course than to go into arbitration. It was held that defendant had thereby waived a provision in the bond or policy limiting right of action to one year after expiration.

[4] In that case notice of claim was given, and within a year thereafter the principal in the bond, the director-general and another having been arrested for trial in the criminal court of Cuba, the successor of the director-general wrote the defendant suggesting that in view of the approaching trial matters respecting the bond should be held without prejudice to any preliminary formal steps, "so that at the end of the criminal trial issue may be joined without delay on the merits of the case." To this defendant assented. It was held that by such assent defendant did not wholly waive the special limitation in the bond, but at most only consented to its extension, so that the case might be brought "without delay" after the termination of the criminal trial, and that an action brought more than two years thereafter was barred.

[5] In that case the action of the defendant in receiving the claim, and in stating to claimant that its settlement must await advice from the company's main office, *thus inducing delay* until the time limit expired, was held a waiver of the limitation.

[6] In that case the period for commencement of suit was, through the correspondence of the parties "confessedly extended" for one month. The insurer participated in negotiations for settlement for a period of more than 90 days after the 30-day limitation had expired. The contract limitation was held waived.

posed to the receiver's contention of actual waiver.

In Southern Pacific Co. v. Stewart, 248 U. S. 446, 39 S. Ct. 139, 63 L. Ed. 350, it was held that compliance with a stipulation in a contract governed by the Carmack Amendment, releasing the carrier from loss or damage unless written claim was made within 10 days after unloading, was not excused by the fact that the amount of the loss could not be ascertained within the period specified, nor was it waived by the fact that the carrier, with knowledge of the situation, negotiated for a compromise before and after the period had expired. In Harvey v. Fidelity Co., supra, the claim had been rejected on the ground that it was not shown that death resulted from a cause within the policy. In an action thereon, begun 4 years later, it was held that defendant's letter in reply to the claim impliedly admitting the death of the insured, and denying liability solely on the ground that the proofs did not show that the death was caused by an accident within the terms of the policy, was not "a request for delay, or for further proofs of death, and no intimation that defendant intended to waive any of its rights under its contract."

The conclusion that the record does not sustain the defense of waiver is supported by numerous decisions, in many of which the facts asserted as constituting the waiver were fully as favorable there as those in the instant case, among which cases are Betteys v. Ætna Insurance Co., 222 Mich. 626, 193 N. W. 197, where it was held that the fact that the claimants sought proofs to convince defendant of its liability, and was encouraged by an agent of the defendant in doing so, did not waive the time limit or estop defendant from invoking the time limitation in the policy within which action for the death benefits must be brought; Maynard v. United States Accident Co., 76 N. H. 275, 81 A. 1077, where it was held that a provision in an accident insurance policy stipulating that no action shall be maintained thereon after six months from the time when proof of disability must be furnished, is not waived by an acceptance of proof at a date subsequent to that required by the contract, nor by an attempt on the part of the insurer to adjust the claim within the time limited for the bringing of suit; it was there held that the correspondence between the parties or their counsel, relied upon to prove a waiver, was merely an attempt to adjust the matter without litigation, and so did not amount to a waiver;

Boston, etc., Ry. v. Maryland Casualty Co., 232 Mass. 246, 252, 253, 122 N. E. 196; Curry v. Empire Life Insurance Co., 49 Misc. Rep. 65, 98 N. Y. S. 6; Allen v. Insurance Co., 95 App. Div. 86, 88 N. Y. S. 530; Hansell-Elcock Co. v. Insurance Co., 177 Ill. App. 500.

In our opinion the trial court rightly directed verdict for defendant for lack of compliance with the one-year limitation for suit. This conclusion makes it unnecessary to consider either the first or second grounds on which direction was likewise requested.

The judgment of the District Court is affirmed.