## COLUMBIAN NAT. LIFE INS. CO. v. MOREY et al.

Circuit Court of Appeals, First Circuit.
June 13, 1928.

No. 2229.

**1. Contracts** ⊜⟺318—Forfeitures are not favored.

The law does not favor forfeitures.

**2. Insurance** ⊜⟺349(1)—Time of payment as to life insurance is material, and cannot be extended without insurer's assent.

Time of payment as to life insurance is material, and cannot be extended by courts without the assent of the insurer.

**3. Insurance** ⊜⟺349(3)—Insured was bound by terms of premium note payable without grace.

Insured, having executed premium note covering annual premium, was bound by the terms thereof to the effect that it was payable without grace.

**4. Insurance** ⊜⟺668(15)—Evidence of insurer's waiver of right to claim forfeiture for failure to pay premium note held insufficient for submission to jury.

In action on life insurance policy, evidence relative to insurer's having waived right to claim forfeiture for failure to pay premium note which by its terms was payable without grace, held insufficient to authorize submission to jury.

**5. Insurance** ⊜⟺371—Waiver of legal right under insurance contract requires consideration or estoppel.

Waiver of a clear legal arising under an insurance contract requires more than mere evidence of intention; it requires consideration or estoppel.

**6. Insurance** ⊜⟺665(8)—Insurer's request for papers in connection with claim under life policy held not evidence of waiver of right to claim forfeiture for nonpayment of premium note (G. L. Mass. c. 175, § 144).

Insurer's request to executors of insured's estate for completed papers in connection with claim under policy of life insurance on insured· followed by further request for physician's certificate and copies of letters testamentary, held not evidence of insurer's waiver of right to claim forfeiture for nonpayment of premium note, since under G. L. Mass. c. 175, § 144, and provisions of policy, the policy after payment of three full premiums became effective immediately for paid-up insurance requiring same evidence of death as though policy was undisputed for its full face value.

**7. Insurance** ⊜⟺665(8)—Insurer's receipt of payment on premium notes after due date was not evidence of waiver of subsequent forfeiture unless amounting to course of business.

Insurer's waiver of prior right of forfeiture for insured's failure to pay premium note on due date, unless amounting to course of business relied on by insured, held not to constitute evidence of waiver of subsequent right to claim forfeiture for nonpayment of premium note.

In Error to the District Court of the United States for the District of Maine; John A. Peters, Judge.

Action by Frank A. Morey and others, executors, against the Columbian National Life Insurance Company. Judgment for plaintiffs, and defendant brings error. Judgment vacated, verdict set aside, and case remanded.

F. H. Nash, of Boston, Mass. (Benjamin B. Sanderson and Frederick R. Dyer, both of Portland, Me., on the brief), for plaintiff in error.

Frank A. Morey, of Lewiston, Me., for defendants in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. The main question in this case is whether the insurance company was entitled to a directed verdict for $283.23, admitted to be due as extended insurance and as prepaid interest on a loan made the insured. Under date of June 1, 1922, the company issued a policy of life insurance to Robain Arsanault for $8,000, payable to his executors. The pertinent provisions of the policy are:

"This policy shall be incontestable after one year from date of issue except for nonpayment of premium. * * *

"Thirty-one days' grace is allowed for the payment of all premiums after the first, during which period the policy remains in full force. Upon default of payment of any

premium or note given therefor, this policy shall lapse, and the company's only liability shall be such, if any, as is hereinafter provided.

"Should this policy lapse, it may be reinstated at any time upon evidence of insurability satisfactory to the company and payment of all past-due premiums with interest at 6 per cent. per annum and payment or reinstatement of any other indebtedness hereon with interest at said rate, unless the cash value has been paid or the extended insurance period has expired.

\* \* \*

"In the event of the lapse of this policy after the premiums for three full years have been paid, the policy shall become effective automatically for paid-up insurance, payable as provided on the first page hereof.

\* \* \*

"Premiums may be paid—annually, $720.-64; semiannually, $374.72; quarterly, $190.-96."

The first premium, $720.64, was apparently paid in cash. In 1923, an arrangement, not shown in detail, was made, under which Arsanault made on June 1 a cash payment and gave three notes for three, six, and nine months for the other quarterly payments. These notes, for about $180 each, are payable with interest at 6 per cent., and expressly made a lien upon the policy in the event of the death of the insured, and given "with the full knowledge and intent on my part that, if it is not paid when due, without grace, said policy shall, without further notice, become void and the insurance thereunder terminate as of the date to which premiums have been paid in cash."

These notes, with interest at 6 per cent. payable without grace, aggregated a little less than the larger quarterly premiums ($190.-96, each) if paid with grace of 31 days. The arrangement for such notes gave Arsanault a slight advantage if he desired, as obviously he did, to pay quarterly.

The three months' note of June 1, 1923, was paid September 8, 1923. The note due December 1, 1923, was paid on December 5, 1923. When the notes for 1924 were paid does not appear in this record, except that the three months' note due September 1, 1924, was, in writing, extended to October 1, 1924, and apparently then paid. The six months' note due December 1, 1924, appears to have been paid on its due date. When the three months' premium note due September 1, 1925, was paid does not appear.

The note due December 1, 1925, was not paid when due. Arsanault, then 70 years old and a heavy drinker, was suffering from chronic myocarditis, and was weak and nervous from excessive drinking; his attending physician testified that his condition bordered on delirium tremens.

By the noon mail, on December 5, a letter dated December 4, was sent by the insurance company's agent in Portland to Arsanault in Auburn, reading as follows:

"The quarterly payment of $185.56 on your policy No. 111747 fell due December 1, 1925. If you have had no sickness within the last six months, I will take care of this item, providing your check is mailed so that I will get (it) not later than Tuesday, December 8. Trusting that you will give this your usual prompt attention, I am. \* \* \* "

Arsanault died that night about 9 o'clock. Whether the letter was delivered at his house where he died before his death does not appear. There is no evidence whatever that he ever received or heard of the letter. No check was sent by him or on his behalf.

In evidence were also various "reminders" sent by a clerk in the company's employ in Portland to Arsanault, that his premiums or premium notes were coming due on designated dates; most of the "reminders" contained the warning: "Notes are payable when due. No grace period allowed." From one or more such "reminders" this warning was omitted.

On January 21, 1926, the company's agent wrote to one of the executors: "Re 111747—Robain Arsanault.

"Dear Sir: Will you kindly let me know when I may expect to receive completed papers in connection with claim under the above-numbered policy."

Later, the same agent wrote to the same executor:

"I acknowledge receipt of proof of death and attending physician's certificate in connection with the claim of Robain Arsanault; in addition to these papers, kindly furnish me with a certified copy of certificate of death, as filed with the local board of health or city clerk. Also, inasmuch as the policy is made payable to the estate of the insured, I must have a certified copy of your letters of administration. Upon receipt of these two articles, the claim will have our prompt attention."

The company claimed a forfeiture of the policy for nonpayment of the note due December 1, 1925, and tendered an unaccepted check for the amount of extended insurance, less a loan of $700 (adjusting the interest) $283.23, as stated above.

The District Court rejected plaintiff's

contention that the premium note due December 1, 1925, was subject to the provision in the policy allowing 31 days of grace for the payment of all premiums, but left the case to the jury on the question of whether the company had, on the foregoing facts, waived its right to forfeiture. The jury found for the plaintiffs in the full amount claimed, $7,615.09.

[1-3] The case must of course be considered in the light of the familiar doctrines that the law does not favor forfeitures, Knickerbocker Ins. Co. v. Norton, 96 U. S. 234, 242, 24 L. Ed. 689; Appleton v. Ins. Co., 59 N. H. 541, 545, 47 Am. Rep. 220, and that, in life insurance, time of payment is material and cannot be extended by the courts without the assent of the insurer, New York Life Ins. Co. v. Statham, 93 U. S. 24, 30, 31, 23 L. Ed. 789. We agree with the court below that Arsanault was bound by the terms of his premium note, payable without grace. It follows that the policy had lapsed when the letter of December 4 was written. The single controlling question, therefore, is, as the learned District Judge charged, whether the company gave up its "right to claim that forfeiture."

[4] Our difficulty is that in this record we can discover no evidence warranting the jury in finding that the insurance company waived this right. Assuming for the moment the accuracy and adequacy of the District Court's definition of waiver as "the voluntary giving up or relinquishment of the right a person has," we can see no evidence that the company had any such intention. The plaintiff's main reliance is upon the letter of December 4. But nothing in that letter indicates an intention to waive the company's plain right to hold that the policy had then lapsed. At most, it was an offer to accept proof of no sickness within six months as "evidence of insurability satisfactory to the company," within the reinstatement provision above quoted. It was plainly error to leave it, as the court below did, to the jury to say whether Arsanault's condition—bordering on delirium tremens, with myocarditis —was "any sickness during the last six months such as is contemplated by this letter." The policy clearly provided that after lapse the company would reinstate only on evidence of insurability satisfactory to it. It could not be compelled to reinstate; it was then as much the judge of the desirability of a proffered risk as when Arsanault applied for insurance.

[5] But waiver of a clear legal right arising under a contract requires more than mere evidence of intention; it requires consideration or estoppel. 2 Williston Contracts, §§ 678, 679, and cases cited. In Globe Mut. L. Insurance Co. v. Wolff, 95 U. S. 326, 333, 24 L. Ed. 387, the court said:

"The doctrine of waiver, as asserted against insurance companies to avoid the strict enforcement of conditions contained in their policies, is only another name for the doctrine of estoppel. It can only be invoked where the conduct of the companies has been such as to induce action in reliance upon it, and where it would operate as a fraud upon the assured if they were afterwards allowed to disavow their conduct and enforce the conditions. To a just application of this doctrine it is essential that the company sought to be estopped from denying the waiver claimed should be apprised of all the facts: of those which create the forfeiture, and of those which will necessarily influence its judgment in consenting to waive it. The holder of the policy cannot be permitted to conceal from the company an important fact, like that of the insured being in extremis, and then to claim a waiver of the forfeiture created by the act which brought the insured to that condition."

To the same general effect are Ripy v. Cloverleaf Co. (C. C. A.) 9 F.(2d) 324; St. Paul Ins. Co. v. Ruddy (C. C. A.) 299 F. 189; Reynolds v. Detroit Co. (C. C. A.) 19 F.(2d) 110; United Ins. Co. v. Thomas (C. C. A.) 82 F. 406, 409, 47 L. R. A. 450; Williams v. Neely (C. C. A.) 134 F. 1, 69 L. R. A. 232.

As already indicated, there is not a scintilla of evidence that Arsanault either acted upon or even received the letter of December 4 containing this conditional offer. There was neither consideration nor estoppel. The company's right to claim a lapse stood exactly the same when Arsanault died at 9 o'clock on December 5 as before the letter was written and mailed.

[6] The jury were also in effect instructed by the court below that the company's request to the executors for "completed papers in connection with claim under" this policy, followed by a further request for physician's certificate and copy of letters testamentary, etc., might be considered as evidence of waiver. Plainly this is not so; for, both under the applicable statute (G. L. Mass. c. 175, § 144) and the provisions of the policy, after the payment of three full premiums, the policy became effective automatically for paid-up insurance. Exactly the same evidence of death and of due appointment of executors was requisite for the performance by the

company of its admitted legal duty after lapse, as would have been required if all premiums had been paid and the policy undisputed and indisputable for its full face value.

It was error to permit the jury to regard these requests as any evidence whatever of waiver of the company's right to claim a lapse of the policy.

[7] The fact that once or twice the payment of notes was received after the due dates has no tendency to show that the company waived the lapse accruing from the nonpayment of the note due December 1, 1925. Waivers, if there were such, of prior rights of forfeiture (unless they amounted to a course of business relied upon by the insured, as in this case they did not) would not be evidence of the waiver of the forfeiture now in question. Besides, it does not appear that the previous waivers (if they were such) were not made after investigation of the insured's then state of health.

Nor were the notices or "reminders" of the due dates of these notes sent out in regular course by a clerk in the office of the agent in Portland, who had a financial interest in getting the premiums paid, evidence of such a character as would warrant a finding that the company waived the lapse of December 1, 1925. We therefore need not discuss the exceptions taken to the admission of some of this evidence.

We are forced to the conclusion that on the entire record the company was entitled to a directed verdict for $283.23 in accordance with its request.

The judgment of the District Court is vacated, the verdict set aside, and the case is remanded to that court for further proceedings not inconsistent with this opinion; the plaintiff in error recovers costs in this court.