## EXCHANGE TRUST CO. v. CAPITOL LIFE INS. CO.

No. 339.

Circuit Court of Appeals, Tenth Circuit.

April 13, 1931.

134

Edward P. Marshall, of Tulsa, Okl. (C. Guy Cutlip and Thomas J. Horsley, both of Wewoka, Okl., and F. A. Bodovitz, of Tulsa, Okl., on the brief), for appellant.

A. A. Davidson, of Tulsa, Okl. (Wm. E. Hutton, of Denver, Colo., and West, Gibson, Sherman, Davidson & Hull, of Tulsa, Okl., on the brief), for appellee.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

COTTERAL, Circuit Judge.

The Exchange Trust Company, executor of the estate of J. Coody Johnson, deceased, appeals from a judgment which denied a recovery in a suit it brought upon a life insurance policy issued to the decedent by the Capitol Life Insurance Company of Denver, Colo.

The policy was issued on September 11, 1925, insuring the life of Johnson, for $50,000, inuring to his estate, in consideration of an annual premium of $4,305.50. He died on February 28, 1927, and a proof of claim being made by the executor payment was refused by the company.

In terms the policy is based on the pay-ment in advance of the annual premium and renewals in semiannual or quarterly installments, at the home office of the company in Denver, or to a designated collector, but in any case only on receipt signed by the president, a vice president, secretary, treasurer, or actuary, countersigned by the collector. And it provides that "failure to pay any premium when due shall cause this policy to cease and determine except as herein provided." Reinstatement was authorized within five years after default in the premium, "upon furnishing evidence of insurability satisfactory to the company and the payment of all past due premiums," with interest. Another stipulation is that "only the president, a vice-president, secretary, treasurer, or actuary has power in behalf of the company (and then only in writing) to make or modify this or any contract of insurance, or to extend the time for paying any premium, and the company shall not be bound by any promise or representation heretofore or hereafter made by any agent or person other than above."

The petition of the executor contained three counts. The third was dismissed on its motion. The other two allege as grounds of recovery: (1) The first annual premium was paid and the second was adjusted by a cash payment and a note for the balance, and the company by retaining the note and demanding its payment after maturity waived a forfeiture of the policy; and (2) the failure of the company to act on decedent's application for reinstatement of the policy combined with the retention of a draft for $500, which he remitted as payment on premium, for an unreasonable time, was an acceptance of the application. The company answered by a general denial and other defensive matters. A jury being waived, the case was tried to the court. The questions of law involved were duly saved for review. There was no serious dispute of fact. We observe that the findings of the trial court are conclusive in so far as they are based on substantial evidence. Stinson v. Business Men's Association (C. C. A.) 43 F.(2d) 312.

The first annual premium was paid by the assured. He made an adjustment of the second by sending to the branch office of the company at Oklahoma City, on September 11, 1926, a cash payment of $339, covering term insurance for two months, and his note of that date for the balance of $3,970.50, due in sixty days, which provided that if it should not be "paid when due it is not to be considered as payment of premium, and the policy on account of which the note is given

will become forfeited and void." The note was never paid, and there was a forfeiture of the policy, unless it was waived. The note and payment were forwarded to the Denver office for entry on its books, and later the note was sent to the Oklahoma City office, with an unsigned receipt form. The note, when overdue, was returned with the receipt, on January 5, 1927, to the Denver office, at its request, and an entry of cancellation was there made, dated January 12, 1927. The note was retained there according to custom, after lapse of a policy, as evidence of non-payment of the premium.

The wife of the company's agent at Oklahoma City and cashier of that office, without advising the Denver office of the fact, mailed an unsigned notice to Johnson as follows:

"Notice of Note.

"The Capitol Life Insurance Company
"Home Office: Denver, Colorado.

"The following described note, given in settlement of premium, will become due at the Home Office of this Company. Kindly give its payment your prompt attention and favor us with remittance covering the same.

| Policy No. | Date Due | Amount | Interest | Total |
|---|---|---|---|---|
| 64552 | Nov. 11-26 | 3970.50 | & Interest | |

"Will thank you to advise us your decision as to reinstatement of your policy per previous correspondence.

"J. Coody Johnson,
"203 Seminole Ave.,
"Wewoka, Ok.

"Bring this notice with you or attach to remittance."

According to the testimony of Johnson's wife, he received the notice about February 18, 1927. This was the supposed demand for payment of the note which in connection with its retention is relied upon by the executor as constituting a waiver of the forfeiture of the policy.

The District Court ruled that it was insufficient, because it was to be considered with the language concerning reinstatement, which qualified it, and because a waiver implies an estoppel, based on reliance by the assured that a forfeiture of the policy would not be enforced, and there was none in this case. It was rightly conceded that a forfeiture clause in an insurance policy is a term beneficial to the insurer which it may elect to waive, leaving the policy in force. Knickerbocker Life Ins. Co. v. Norton, 96 U. S. 234, 240, 24 L. Ed. 689; Grigsby v. Russell, 222 U. S. 149, 32 S. Ct. 58, 56 L. Ed. 133,

36 L. R. A. (N. S.) 642, Ann. Cas. 1913B, 863; Thompson v. Ins. Co., 104 U. S. 252, 26 L. Ed. 765; Columbian Nat. Life Ins. Co. v. Morey (C. C. A.) 26 F.(2d) 580; Concordia Ins. Co. v. School District, 51 S. Ct. 275, 75 L. Ed. —— (Feb. 24, 1931). But the request was for payment, and for advice as to reinstatement of the policy which was dependent both on payment of premium and evidence of insurability satisfactory to the company. Viewed as requiring both, the notice was not such an unqualified demand as would work a reinstatement of the policy.

Again, Johnson was in no way influenced by the notice, for, as the correspondence hereinafter referred to shows, he had been notified by the Denver office of the lapse of the policy, he had already acknowledged the fact and was negotiating for a reinstatement, and he later for that purpose made a remittance of $500 and furnished a medical report. For this reason, also, the notice was not effective to waive the forfeiture of the policy. Equitable Life Assur. Society v. McElroy (C. C. A.) 83 F. 631; Globe Mutual Life Ins. Co. v. Wolff, 95 U. S. 326, 24 L. Ed. 387; Columbian Nat. Life Ins. Co. v. Morey (C. C. A.) 26 F.(2d) 580. It was essential that a waiver or a course of conduct be shown which afforded the assured a just and reasonable ground to infer that a forfeiture would not be exacted. Thompson v. Ins. Co., 104 U. S. 252, 26 L. Ed. 765.

But for another all-sufficient reason the notice is unavailing to the executor, and that is it was not authorized by the company. The note was in the custody and control of the Denver office. The policy itself provides that the president or other designated officers of the company shall have the sole authority to make or modify the contract or extend the time for paying any premium, and that it shall not be bound by the promise or representation of any other agent or person. The notice did not purport to be and was not so authorized, and it did not bind the company.

Counsel for the executor contend, however, that the authority to send the notice was admitted under the state procedure, since it was alleged in the petition and not denied under oath. It may be conceded that there is no such denial when it is qualified by an admission of the fact. But the answer in this case is verified, and it contains first a general denial of facts alleged, and a specific denial that the notice was sent and received, and then alleges that the notice if sent was not an attempt to effect a reinstatement, or was not an acknowledgment of it, but was an inquiry.

as to the purpose of Johnson in meeting the requirements for reinstatement. We think the denial was sufficient to make an issue of the authority for mailing the notice, and the proof is conclusive there was none.

■ The fact that the company held the note as proof of nonpayment of the premium in the first instance was of no materiality. Thereafter its retention was proper for the purpose of collection if Johnson should establish his insurability.

From these considerations, we agree with the District Court in holding that the notice of note was insufficient to waive the forfeiture of the policy.

■ That court also ruled there was no reinstatement of the policy, upon the theory advanced that it was implied from a failure to grant the application, and held that the company rightfully asked a showing of insurability, as no inference arose from the evidence that it acted arbitrarily or in bad faith.

The negotiations for a reinstatement occurred between Johnson and the Denver office. They began with a letter of January 29, 1927, in which it called his attention to the lapse of the policy and offered to advise him as to its terms for reinstatement. The next day he answered that letter acknowledging its contents, adding he had been unable to take the note up before it was due, he had asked the company to extend the note, it had agreed to do that on payment of $300, he had remitted the amount by draft, had been ill, etc., he would not like to have the policy lapse, yet he didn't blame the company as it was a matter of business, and concluded he would appreciate any requirement he could meet to have his policy reinstated. That draft was never received by the company. On February 5, 1927, the company wrote him, enclosing for the purpose of reinstatement blank forms for his report and an examination by his physician, and stating that upon its receipt and approval and the payment of the note, the company would give the reinstatement its attention, and if payment was inconvenient, he could remit $500 on account and the note would be renewed to April 11, 1927. On February 12, 1927, he wrote the company he would comply. On February 24, 1927, he sent the company a draft for $500 and application, consisting of his own report and that of Dr. Perkins, his physician, noting the extension was given until May first and asking permission to make semi-annual payments. That letter was received by the company on February 26. Johnson died two days later. On March 2, 1927, the company addressed a letter to him, saying that its medical board requested, without prejudice to Dr. Perkins, an examination by Dr. Knight, due to the amount of insurance involved, and on the same day it requested that examination. Also, on that day, the Oklahoma City office mailed to the company a notice of Johnson's death, which was the first notice it had of the fact. On March 18, 1927, the company mailed the draft for $500 to Johnson's address.

The company did not fail to act in a reasonable time. It did act promptly, but did not approve the application, because it was not a satisfactory showing, as required by the policy. His letters had disclosed his ill health. There was no reference in the application to any present affliction, although he lived but four days after he mailed the application. He was doubtless in extremis; and the trial court so found. The company was entitled at its option to a further medical report by its own examiner in keeping with the policy. It was certainly not bound to accept a report in which his true condition was concealed. Equitable Life Assur. Society v. McElroy, supra. A different question would arise if the company had proposed absolutely to accept the report of the assured, and then failed to act upon it. The authorities cited by counsel for the executor are inapplicable, because they are based on such a proposal.

■ In order to procure a reinstatement of the policy in suit, an application to reinstate and an acceptance thereof were necessary. Equitable Life Assur. Soc. v. McElroy, supra; International Life Ins. Co. v. Mowbray (C. C. A.) 22 F.(2d) 952; Wastun v. Lincoln Nat. Life Ins. Co. (C. C. A.) 12 F. (2d) 422. Those essentials were not shown in this case. The mere retention of the application was not sufficient for the purpose. Davis v. N. Y. Life Ins. Co., 47 F.(2d) 1051 (8 C. C. A., Mar. 11, 1931); Kan. City Life Ins. Co. v. Phillips, 31 Ariz. 122, 250 P. 882. The company was put in the possession of the application and draft as an attempted compliance with the requirements imposed. There was no occasion for a return of them pending the negotiations, and the assured did not ask it. Besides, he was in no way misled, as he knew he was bound to satisfy the company of his insurability. There was no undue delay in returning the draft. It was held only two days before his death. Its retention thereafter was not prejudicial, as in that period a compliance with the conditions of reinstatement was impossible and was not attempted.

In view of the facts, the District Court committed no error in deciding there was no reinstatement of the policy.

The judgment of the District Court is therefore affirmed.