### HOLMES v. WESTCHESTER FIRE INS. CO. OF NEW YORK.

#### No. 4485.

District Court, D. New Jersey.

July 8, 1946.

Albert Kushinsky, of Toms River, N. J., for plaintiff.

Lum, Fairlie & Wachenfeld, and Charles S. Barrett, Jr., all of Newark, N. J., for defendants.

FORMAN, District Judge.

This suit was commenced October 26, 1944, in the New Jersey Supreme Court and has been removed to this court. The complaint alleges ownership of a dwelling and saloon known as "Captain Kidd's Inn", that defendant issued to plaintiff two policies of insurance on June 1, 1941, and September 11, 1941, respectively, against loss or damage by fire in the amount of $2,500 each, that the dwelling and saloon were destroyed by fire on May 31, 1942, and demand for judgment in the sum of $2,500 is made on each policy. The defendant answered, moved for judgment on the pleadings and for summary judgment. The case was tried before this court without a jury, and upon the conclusion of proofs defendant moved for a directed verdict, attacking plaintiff's representations to the insurer with regard to title to the premises, and claiming that this action is untimely, since it was not commenced within twelve months after the damage by fire as required in the terms of the policies.

Plaintiff denies defects in his title which would preclude recovery on the policies, and claims defendant waived the requirement of the policies concerning seasonability of claims.

The premises were insured by several policies of insurance which for convenience will be referred to as the Rhode Island Group and the Westchester Group, the latter constituting the policies involved in this particular suit. The Rhode Island Group policies were for an aggregate amount of insurance in the sum of $8,500 and were issued in the name of plaintiff only. The Westchester Group policies were issued in the names of plaintiff and his wife, and as heretofore stated, were in the total sum of $5,000. Title to the premises until after the fire was in the name of plaintiff and his wife.

The policies in both groups contained a standard mortgagee clause making the loss, if any, payable to Bond and Mortgage Guaranty Co.

The legal representative of both groups of insurers was the firm of Lum, Fairlie & Wachenfeld and the member of that firm directly handling the business was John S. Foster. He negotiated with plaintiff's attorney, Albert Kushinsky, following the accrual of these claims, and the transactions between the two are the source of the claimed waiver.

Pursuant to the provisions of the policies proofs of loss were filed July 28, 1942. The Rhode Island Group denied liability, and on October 6, 1942, suit was commenced in the New Jersey Supreme Court on the policies within that group. The Westchester Group did not deny liability, and on the contrary examined the plaintiff and his wife under oath under the terms of the policies of insurance. On November 4, 1942, Mr. Kushinsky forwarded the transcript of this testimony to Mr. Foster and stated: "Kindly advise me whether it is your intention to pay the loss or to deny liability, as it is our desire to institute suit so that all the suits can be tried at the same time if possible."

On November 5, 1942, Mr. Foster replied: "I would like very much to see if we cannot dispose of any claim which Mr. and Mrs. Holmes may have against the Westchester Fire Insurance Company" and toward the end that he would be "in a position to deal with the claim a little more effectively", he requested a mortgage statement and a proper sum for depreciation. He stated: "I feel sure if you do this there is a very good likelihood of our being able to dispose of the Westchester's interest".

Further letters were exchanged but the two attorneys were unable to agree on the extent of the loss. Mr. Kushinsky indicated it would be best to litigate, to which Mr. Foster replied on November 17, 1942: "* * * it may be possible for us [to have] the loss determined in accordance with the policy provisions. * * * I have written to the company asking for its authority to permit me to suggest to you * * * that the matter be submitted to an appraisal".

On the 18th of November Mr. Kushinsky replied: "With regard to the question of appraising the loss in accordance with the terms of the policy, if it is your company's desire that it be done, kindly advise me and I will arrange to select an appraiser so that this matter can be disposed of soon." And on the 20th of November Mr. Foster wrote: "I have not yet heard from the Westchester but as soon as I have had word I will get in touch with you about the possibility of determining the amount of the loss by appraisal to eliminate delay and cost of suit."

On December 2, 1942, Mr. Foster wrote as follows: "I would appreciate it very much if you will let me know as soon as you have come to your conclusion whether you intend to file a bill in chancery for, *as pointed out to you*, the nature of your bill may have a very marked bearing upon the position of the Westchester, and more particularly since I desire to pay the mortgagee's claim and I will have to determine whether this is to be paid with a denial of liability to the assured or whether the payment to the mortgagee will be for the benefit of the assureds." (Italics supplied.)

The insured property was conveyed to plaintiff and Harriet G. Holmes, his wife, by B. & M. Corporation by its deed dated May 1, 1935. The insurance policies of the Rhode Island Group had been issued to plaintiff alone upon his representation that he had the fee simple. The insurance policies of the defendant were issued to plaintiff and his wife upon the representation that they were the owners in fee simple. The aggregate amount of insurance written by the Rhode Island Group was in the sum of $8,500 as against $5,000 written by the defendant. In the light of the prospective defenses that could be anticipated from the insurance companies on the basis of misrepresentation of ownership it is obvious why counsel planned to institute a suit in the Court of Chancery of New Jersey to have the deed of the B. & M. Corporation reformed so as to give the fee simple to the plaintiff solely and make his position consistent with his claims against the insurers who carried $8,500 (the larger portion) of the risk. That Mr. Foster was apprised of Mr. Kushinsky's intention to institute such a chancery action is evident from the last quoted letter of December 2,

1942. In fact, the action was commenced on December 21, 1942. The Rhode Island Group sought to intervene in this suit, but was unsuccessful. It was practically an ex parte action and on August 17, 1943, a decree was entered in the Court of Chancery of New Jersey in the suit of Joseph A. Holmes against Harriet G. Holmes and B. & M. Corporation, Docket 149/263, in which it was ordered that the deed should be reformed so as to substitute for the grantees named in it the plaintiff as the sole, "true and correct owner".

Plaintiff recovered in his suit against the Rhode Island Group and commenced this action afterwards.

Plaintiff constructs a waiver out of negotiations for settlement and demands made by defendant which he claims prevented the prosecution of his claim until after the twelve month period had expired. He claims defendant did not deny liability under the Westchester Group Policies, suggested arbitration to which he was willing but that defendant never suggested a date and that defendant led him to believe it would pay in the event of recovery against the Rhode Island Group. As to title he claims his representations were correct when made.

Plaintiff relies upon the case of Martin v. State Ins. Co., 44 N.J.L. 485, 43 Am.Rep. 397, wherein suit was brought on a policy of fire insurance which provided that suit should be brought within six months after the loss occurred. The fire happened September 23, 1870, and suit was commenced April 7, 1871. Plaintiff's attorney testified that negotiations for settlement continued up to about the time suit was brought. The court was of the opinion they continued even after the period of limitation and that it was lawful for the jury to infer that defendant intended not to rely on the limitation, and that plaintiff's delay was owing to the fact that such intention was manifest, and, hence, that the condition was waived. Another reason for finding a waiver was found in defendant's request that the assured submit to an examination pursuant to the provisions of the policy. No time was specified for the examination, but on the second request defendant stated he would be ready at the plaintiff's earliest convenience. The court found that this request was not withdrawn prior to April 7, 1871, when plaintiff tendered himself for examination which was refused. There was no contention that plaintiff's earliest convenience was unreasonably delayed and the court concluded that a reasonable compliance with this provision in the policy for the company's benefit which was insisted upon by it prevented compliance with the condition as to the time of bringing suit, and therefore a waiver of that condition became inferable.

It is noted that correspondence referring to the Westchester Group discontinued with the letter of December 2, 1942 except for a letter from Mr. Foster addressed to Mr. Kushinsky dated June 5, 1944, which contained the heading, "Rhode Island Ins. Co. —Holmes" and the following paragraph: "The companies have suggested that if you care to submit any offer they will be very glad to consider it. If you have any offer to submit I would suggest, for the purpose of clarification, that you indicate the damage upon which you are willing to compromise. I make this observation since you realize the provisions of the policy for pro rating will require taking into consideration the Westchester coverage."

Under the standard policy terms (and it is not denied that the Rhode Island Group Policies contained such standard provisions) liability would reflect a pro rating proportionate to any other insurance issued on the property so that this cannot be interpreted as a continuation of negotiation to settle any Westchester liability. The fact that a settlement by the Westchester Group was not referred to in the correspondence following December 2, 1942, except for the one instance noted coincides with the introduction of a new and material factor at about that time. The bill to reform title was filed December 21, 1942. Prior to the development of this factor, it would seem appropriate for defendant to discuss settlement and arbitration, for its policies were issued in the names of plaintiff and wife and title to the property coincided. With reformation, however, title was made to conform with the policies within the Rhode Island Group, and to diverge from the coverage of the policies within the Westchester

Group—it could not be compatible with both.

The court concludes as a fact that there is no intrinsic evidence in the correspondence which shows an offer to negotiate a settlement or to arbitrate, or to pay the claims against the Westchester Group in the event plaintiff recovered against the Rhode Island Group, after reformation of title was suggested and that reformation and its legal effect were expressly adverted to as early as December 2, 1942, when Mr. Foster wrote: " * * * as I pointed out to you, the nature of your bill may have a very material bearing upon the position of Westchester. * * *"

Mr. Kushinsky denied that Mr. Foster ever pointed out anything to him prior to writing this letter, and it would appear from his testimony that the allusions to a bill in chancery made no impression upon him. He testified that Mr. Foster on numerous occasions discussed settlement of this claim, led him to believe that they could arbitrate pursuant to the terms of the policy, did not deny liability, and on the contrary, gave assurances that the Westchester Group would pay its proportionate share of the loss in the event of recovery against the Rhode Island Group. He specified that these conversations took place in January and March, 1943, and on June 9, 1943, at Camden, New Jersey, on which occasion Mr. Foster was defending the Rhode Island Group.

Mr. Foster's testimony presents a complete denial with respect to negotiations, settlement and arbitration, and he says that after December 2, 1942, he never told Mr. Kushinsky the Westchester Group would pay or that payment would abide determination of the claim against the Rhode Island Group.

In view of the fact that reformation of title conspicuously altered the legal relations, and must have made an immediate impression upon Mr. Foster as is evidenced by the absence of any documentary evidence to sustain plaintiff's contention, the court concludes that negotiations out of which plaintiff seeks to construct a waiver ended with the letter of December 2, 1942. At that time plaintiff had until May 31, 1943, to prosecute his claim within the one year limitation period. Accordingly, it follows that the case of Martin v. State Ins. Co., supra, wherein negotiations continued past the expiration of the limitation period, is quite different.

The rule regarding waiver is aptly expressed in the cases of Continental Ins. Co. v. Fire Ass'n, 6 Cir., 1945, 152 F.2d 239; and Reynolds v. Detroit Fidelity & Surety Co., 6 Cir., 1927, 19 F.2d 110, wherein waivers of the time for bringing suit was claimed. In the former case the complaint alleged negotiations in an endeavor to arrive at an amicable disposition, and the court stated: "We think the District Judge was right in holding that mere negotiations in an endeavor to arrive at an amicable disposition of a controversy are insufficient basis for the application of the doctrine of waiver or estoppel. It is noteworthy that there are in the complaint no allegations of promises to pay, concealment, bad faith, fraud, misrepresentation or other facts which might be construed as an attempt to mislead plaintiff's assignor or to lull it into a sense of security, or into the belief that payment of any amount would be made by defendant. There is no allegation, direct or inferential, of intention by plaintiff's assignor to commence suit within the period limited by the policy and of its being turned from that course of action by misleading acts or promises by the defendant. No facts are alleged from which an inference might be drawn that the postponement of the suit was at the express or implied request of the defendant, or that there was an intentional delay in adjustment until after the limitation period provided in the policy had passed." 152 F.2d 239, 240.

In the second of the cited cases a waiver was claimed because of delay caused the receiver of a corporation by defendant in investigating a required report filed with it by plaintiff. The court stated:

"The burden of proof is upon the party claiming a waiver to prove it. * * * In the absence of conduct creating an estoppel, a waiver must be supported by an agreement founded upon a valuable consideration. There can be no waiver unless so intended by one party and so understood

by the other, but when a party has so acted as to mislead the other he is estopped thereby.

\* \* \* \* \*

"We think that what happened was no more than delay on the part of the surety in announcing its action, which the receiver could at any time have ended by commencing suit, and without thereby violating any agreement or propriety, or even courtesy. We think the weight of authority clearly opposed to the receiver's contention of actual waiver." 19 F.2d 110, 113, 114.

The negotiations herein do not constitute a waiver within the above holdings and in view of the conclusion that negotiations for settlement ended December 2, 1942, and prior to the expiration of the limitation period plaintiff could not have been prejudiced. Defendant's motion for a directed verdict is granted.