# Wytheville

## Solon L. Bryant and Sue Bryant Woodward v. Continental Life Insurance Company, Inc.

June 10, 1937.

Present, Holt, Hudgins, Gregory, Browning, Eggleston
and Spratley, JJ.

The opinion states the case.

*Junius W. Pulley* and *Thomas L. Woodward*, for the plaintiffs in error.

*James H. Corbitt* and *Harry Nicholson*, for the defendant in error.

BROWNING, J., delivered the opinion of the court.

Mrs. Sue Bryant Woodward was the beneficiary in a life insurance policy, issued by the Continental Life Insurance Co., Inc., on June 8, 1925, on the life of her father, Solon L. Bryant. She was also the beneficiary, by transfer, in four policies issued by the same company on the lives of four different persons, one dated January 30, 1922, and the others dated in 1931. She was also the beneficiary in three policies issued by the same company, on the lives of different persons, one dated in 1929, and the others in 1930 and 1931, respectively. In the three last-mentioned policies her designated relation to the insured is that of "friend." The significance of these facts will presently appear.

The premiums of all of these policies were to be paid weekly, on or before each Monday, and the aggregate weekly sum was alleged to be $4.32, which was paid up to March 18, 1935. No other premium payments were thereafter made until more than four weeks had elapsed from the date on which the next premiums were due, which was March 25, 1935. This, according to the terms of the policies, rendered them void.

The following are provisions of the policy which are important:

"PAYMENT OF PREMIUM—Each premium is due and payable at the Executive Office of the Company, but will be accepted elsewhere by a duly authorized agent, who shall at the time of payment enter same in the Receipt Book belonging to this Policy. If for any reason the agent shall not call for the premium when due, it shall be the duty of the policyholder to bring or send said premium to the Executive Office, or to the Company's agent, and in event of a failure to perform this duty within four weeks from the date on which said premium was due this Policy shall thereupon become void.

"ALTERATIONS AND WAIVERS—Agents (which term includes Superintendents and Assistant Superintendents) are not authorized to make, alter or discharge contracts or waive forfeitures. They have no power, on behalf of the Company, to receive a premium more than four weeks after the day on

which the same is due, nor receipt for same in the Premium Receipt Book, and any payment of such premium to an agent, or to the Company at its Executive Office, shall not be entitled by virtue of the contract to be credited upon the Policy, whether entered in the Receipt Book or not, and shall be returned upon demand. Any erasure or alteration made herein except by endorsement signed by the President or Secretary, shall be void."

The policies, including the one which is the subject of this suit, were formally declared lapsed on Saturday, the 20th of April, 1935, for non-payment of premiums. On the following Tuesday a check for one week's premiums was tendered to the company's agent, at its office, in the city of Suffolk. This was done through Mr. Howell, formerly a collector of premiums for the company, but in this instance acting for Mrs. Woodward, the beneficiary in the policy and the plaintiff in this suit. He was told by the agent that the policies had lapsed. The check was declined and Mr. Howell returned it to Mr. Woodward, the husband of the plaintiff, informing him of the agent's reason for not accepting it.

The check, drawn on the 20th, was left at a drug store on that day by Mr. Woodward, who directed the druggist to give it to Mr. Howell for delivery to the company.

There is no question of the fact that the premiums were not paid in time to prevent the voidance of the policy.

Unless some legal and valid defense were interposed by the insured or the beneficiary which would relieve against the forfeiture or failure to pay the premiums, by the terms of the contract, the effect of such failure is fatal to the plaintiffs' case.

The plaintiffs, by notice of motion for judgment, sued the company for damages for the willful and fraudulent lapsing, cancellation and forfeiture of the policy first described herein. The damages are alleged to be $328.50, suffered by them, on account of the payment of premiums during the life of the policy. This sum is at variance with an itemized statement put in evidence of the premiums paid, which, however, may be of inconsequential moment.

By agreement of counsel, the trial was had without a jury and the court gave judgment for the defendant upon the evidence introduced by the plaintiffs.

The plaintiffs urged that the company had, by its course of dealing with them, established the custom of collecting the premiums, on the policies referred to, at the office of Mr. Thomas L. Woodward, and that this method of collection could not be changed without their consent.

Prior to the 5th of November, 1934, Mr. Howell, at the instance of the defendant, notified the plaintiffs that he would not continue to collect the premiums at Mr. Woodward's office and that they would in the future be due and payable at the company's office, in the National Bank building in Suffolk, which is just across the street about one hundred feet from the American Bank building in which Mr. Woodward's office is.

This notice was accentuated by a letter, of the district manager of the company, to Mr. Woodward, of November 5, 1934, to the same effect. Thereafter, until the lapsing of the policies, Mr. Woodward paid the premiums at the company's office, in accordance with the terms of the notification. Sometimes this was done by sending the checks to the office by Mr. Howell, who testified that he did this as a personal courtesy from himself to Mr. Woodward.

This was not the first time the place of payment was changed. In the early existence of the policy the premiums were collected from Mrs. Woodward. The subsequent change to the office of Mr. Woodward was doubtless for her convenience. It, therefore, seems not to have assumed the seriousness of a custom or usage, with its attendant incidents, but only a "variable practice," which was subject to change by the company in accordance with the provision of the contract on the subject, and this, for any reason whatever. But if there were a custom, as is urged, it could be abandoned upon notice to the party affected. *Sovereign Camp, W. O. W.* v. *Booker*, 93 Okl. 139, 219 P. 931.

Again the plaintiffs contend that it was proven that it was the custom of the defendant insurance company to notify

its policyholders of its intention to lapse the policy upon a particular date and that no such notice was given in this case and that, therefore, there was a waiver of the forfeiture by the company. There is evidence tending to prove this contention, but if there were such a custom it is not shown that the plaintiffs knew of it, at the time of the making of the contract, or at any other time, and, therefore, the parties could not be said to have contracted with reference to it.

■ "The existence of knowledge of the usage at the time the contract was entered into is, therefore, essential.

"From the reason on which the rule is based, *i.e.*, that the usage being known to both parties it is presumed that they contracted in reference to it, it follows that the usage cannot be set up by a party who was ignorant of it at the time of the contract." Am. & Eng. Enc. of Law (2d Ed.), vol. 29, p. 388.

We think this contention is without merit.

■ In the note appended to the case of *Wheeler* v. *Connecticut Mut. Life Ins. Co.*, 82 N. Y. 543, 37 Am. Rep. 594, 600, the following quotation is found: "It was said in *New York Life Ins. Co.* v. *Statham, supra* (93 U. S. 24, 23 L. Ed. 789), that 'promptness of payment is essential in the business of life insurance. All the calculations of the insurance company are based on the hypothesis of prompt payments. They not only calculate on the receipt of premiums when due, but upon compounding interest upon them. It is on this basis that they are enabled to offer insurance at the favorable rates they do. Forfeiture for non-payment is a necessary means of protecting themselves from embarrassment. Delinquency cannot be tolerated or redeemed except at the option of the company.'

"If the insured can neglect payment at maturity and yet suffer no loss or forfeiture, premiums will not be punctually paid. The companies must have some efficient means of enforcing punctuality. Hence their contracts usually provide for the forfeiture of the policy upon default of prompt payment of the premiums. If they are not allowed to enforce this forfeiture they are deprived of the means which they have reserved by their contract of compelling the parties

insured to meet their engagements. The provision, therefore, for the release of the company from liability on a failure of the insured to pay the premiums when due is of the very essence and substance of the contract of life insurance. To hold the company to its promise to pay the insurance, notwithstanding the default of the insured in making punctual payment of the premiums, is to destroy the very substance of the contract. This a court of equity cannot do. *Wheeler* v. *Connecticut Mut. Life Ins. Co.*, 82 N. Y. 543 (37 Am. Rep. 594); see also, the opinion of Judge Gholson in *Robert* v. *New England Mut. Life Ins. Co.*, 1 Disn. 355, 12 O. Dec. 668.

"It might as well undertake to release the insured from the payment of premiums altogether as to relieve him from forfeiture of his policy in default of punctual payment. The company is as much entitled to the benefit of one stipulation as the other, because both are necessary to enable it to keep its own obligations.

"In the contract of life insurance the insurer and insured both take risks. The insurance company is bound to pay the entire insurance money, even though the party whose life is insured dies the day after the execution of the policy, and after the payment of but a single premium.

"The assured assumes the risk of paying premiums during the life on which the insurance is taken, even though their aggregate amount should exceed the insurance money. The assured also takes the risk of the forfeiture of his policy if the premiums are not paid on the day they fall due.

"The insurance company has the same claim to be relieved in equity from loss resulting from risks assumed by it as the insured has from loss consequent on the risks assumed by him. Neither has any such right."

The plaintiffs further contend that the insurer cannot lawfully cancel insurance for non-payment of premiums if it is at the time indebted to the assured on any account. They urge that at the time of the lapsing of the policy which is the subject of the suit it lacked only two months of being ten years old, at which time it would have had a cash surrender value. They also urge that the company was never, at any

time, liable on the other policies referred to, because Mrs. Woodward, the beneficiary, had no insurable interest in the lives of the insured. The contention was that the policies were at all times void and that, therefore, there was no consideration for the premiums paid by Mrs. Woodward during the existence of the policies, and that the company was indebted to her in the amount of the premiums paid and interest thereon.

As to the contention that the policy in the suit lacked only two months of existence when it would have a cash surrender value it is sufficient to say that the requisite period had not been reached. An infant is in a state of infancy even at the age of twenty years and eleven months and during the entire period of infancy it is subject to all of the legal inhibitions that inhere in that state of incompetency. A miss is as good as a mile.

As to the second contention, which, with respect to four of the policies involved, based upon the fact that Mrs. Woodward is an assignee, which renders the policies invalid, it is manifest that the provisions of section 5767 of the Virginia Code of 1936 have been overlooked. By that section the title of an assignee to the benefit of a policy, where the insurance was lawfully effected, is perfectly good, though the assignee had no insurable interest in the life of the insured.

In the three policies last referred to in the first paragraph of this opinion Mrs. Woodward is designated in each as "friend" of the insured. That would, seemingly, invalidate the policies, unless the insurer would be estopped from denying liability by reason of the fact that it had knowledge of the relationship and consented to the conditions. It is in evidence that in each instance the policy was approved by the manager of the company.

We express no opinion as to the legal effect of this.

The evidence is most meager and affords no sound basis for the determination of these questions.

It is not proven that the company was indebted to Mrs. Woodward at the time of the lapsing of the policies. If it was indebted to her, in fact, then, the weight of authority seems

to be that such indebtedness, if sufficient in amount, should have been applied to the payment of the premiums, to prevent a forfeiture of the policies.

We note here that in each of the policies it is provided that there shall be no cash surrender value until after ten years have elapsed since the issuance of the policy.

As to the questions relating to the alleged indebtedness of the insurer to the beneficiary, we may say that they were but casually referred to in the trial court. They appear not to have been insisted upon there and are for the first time accentuated in this court. This, of course, is without warrant of law or rule.

We find no error in the judgment of the trial court and it is, therefore, affirmed.

*Affirmed.*