### FORBES v. NEW ENGLAND MUT. LIFE INS. CO.

### No. 3266.

Circuit Court of Appeals, First Circuit.

Nov. 9, 1937.

John P. Carleton, of Manchester, N. H. (McLane, Davis & Carleton, of Manchester, N. H., on the brief), for appellant.

Carl C. Jones, of Concord, N. H. (Demond, Woodworth, Sulloway, Piper & Jones and James B. Godfrey, all of Concord, N. H., on the brief), for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

This is an action of assumpsit to recover the sum of $25,000 alleged to be due the assignee of the Granite State Coal Company, a New Hampshire corporation, hereinafter referred to as the coal company, under a policy of insurance issued by the defendant, a Massachusetts corporation, on the life of Joseph R. Woods, the principal owner and manager of said coal company, who died March 23, 1936, in which policy the coal company was named as the beneficiary.

The case was tried before a jury in the federal District Court of New Hampshire. The trial judge, after the evidence was in-

troduced, ordered a verdict for the defendant on the ground that there had been a forfeiture of the policy by failure to pay the premium due on January 30, 1936, within the period of grace allowed by the policy.

To this order exception was taken by the plaintiff, who assigned as error that payment of premiums within the period of grace allowed by the policy had by its conduct been waived by the defendant and it was estopped to claim a forfeiture.

The undisputed facts on which the order of a verdict for the defendant was based are as follows: The policy in question was issued through the office of Carl S. Nute, general agent of the defendant for the state of New Hampshire, to become effective as of April 30, 1934. Neither Woods nor the coal company at that time was in funds to pay the initial premium of $104.25, but by arrangement with Carl S. Nute the premium was advanced by him on April 29, 1934, Woods reimbursing Nute by a check on May 11, 1934. The payment of the premium to the defendant was made by Carl S. Nute, charging the amount against commissions due him from the defendant under an arrangement he had with the defendant.

Another premium became due on July 30, 1934, the period of grace expiring on August 30. This premium was paid by Woods on August 29, 1934, by check payable to "Carl S. Nute, General Agent." The third quarterly premium was due October 30, 1934, the period of grace expiring on November 30, 1934, and was paid on the latter date, by check payable to New England Mutual Life Insurance Company.

The fourth quarterly premium was due January 30, 1935, the period of grace expiring on March 2, 1935, which fell on Saturday. Both Carl Nute and the cashier of the defendant company, Miss Margaret Berry, testified that Saturday being a half holiday, checks coming in on Saturday after the first mail were usually deposited in the bank on Monday following, which would be March 4. The payment, however, would be entered on the cash book of the company as of Saturday and receipt for the premium would be issued on that date, though the bookkeeping entries would not be made until the following Monday. Miss Berry also testified that Mr. Woods' check for the fifth quarterly premium was received on March 2, 1935, and a receipt was issued on that day, though the check was dated March 4.

The sixth quarterly premium due March 30, 1935, the period of grace expiring on April 30, was paid by crediting a dividend declared on the policy on March 30, 1935. The seventh quarterly premium due July 30, 1935, the period of grace expiring August 30, 1935, was paid on that day by Carl S. Nute under the same arrangement as the initial premium was paid in April, 1934, Woods agreeing to reimburse Nute, which he did on September 10 by check payable to the New England Mutual Life Insurance Company.

Carl S. Nute testified that in late November, 1935, he had a talk with Woods, who was then drinking heavily and whose business, due to the loss of large customers, was, as Woods expressed it, "going to pot," and who said he did not think he could keep up the payments on his policies, one of which was payable to his wife. Nute then arranged for a loan on the policy, payable to Woods' wife, to keep that policy in force, and Woods or the coal company paid the eighth premium on the business policy with a check dated November 30, which fell on Saturday. It was not entered on the books until the following Monday. The cashier also testified that the facts as to this check were similar to that received on March 2, 1935, and a check received on Monday but dated on Saturday, November 30, the last day of the grace period, payable to the order of the insurance company, was treated as received on Saturday and within the grace period. This does not show an intent on the part of the defendant to waive payments of premium when due or within the period of grace. Nute also testified that on November 27 he talked with Woods about his excessive drinking and told him that in the event of his failure to pay another premium when due, or within the grace period, he could not help him, and he did not think he could pass a physical examination if one was required to reinstate the policy.

There is no significance to the fact that some of Woods' checks were payable to the insurance company and some to Nute as general agent, since in some instances checks were payable to the general agent, when paid during the period of grace, while checks reimbursing Nute when he advanced the premium were made payable to the insurance company.

When the January, 1936, premium became due on the 30th of that month, the grace period expiring on March 2, 1936, Carl S. Nute and his son, James R. Nute, were away from the office of the general agent during the first part of March. The cashier had in December, 1935, sent out the customary notices of the due date of the premium, and on March 2, 1936, called Woods personally on the telephone and reminded him that it was the last day on which the premium could be paid. Woods said something about a check which was coming to pay it. He was told by the cashier that Carl S. or James R. Nute, if either of them were at the office, might make some arrangement to help him. She apparently did not know of Carl S. Nute's talk with Woods in the preceding November when Woods was told by Nute that he could not help him again if he failed to pay the premium within the period of grace.

A check for this premium was not tendered until March 11, 1936, and Miss Berry was told by James R. Nute to write the company and ask for authority to receive the check, which she did. This was refused and she was advised that a medical examination would be necessary to reinstate the policy.

We think the jury upon these facts could not have found that the defendant company intended to waive the payment of premiums on the due date or within the period of grace allowed. In the two instances when payments by arrangement with Carl S. Nute were paid when due or within the grace period, and Woods later reimbursed Nute, Woods evidently knew that premiums must be paid within the grace period or his policy would lapse. The payments on March 2, 1935, and November 30, 1935, which in each case fell on Saturday, if received on Saturday, or a check received by mail Monday, but dated on Saturday, according to the custom of the office, were entered on the books on the following Monday, cannot be construed as an intent on the part of the insurance company to extend the time within which payments could be made and did not mislead Woods into thinking that if he did not pay the premium within the grace period on March 2, 1936, he could pay eleven days later.

In the case of Columbia National Life Ins. Co. v. Morey et al., 26 F.(2d) 580, this court said in substance on page 582:

While the case must, of course, be considered in the light of the familiar doctrines that the law does not favor forfeitures, Knickerbocker Life Ins. Co. v. Norton, 96 U.S. 234, 242, 24 L.Ed. 689, Appleton v. Ins. Co., 59 N.H. 541, 545, 47 Am. Rep. 220, in life insurance, time of payment is material and cannot be extended by the courts without the consent of the insurer. New York Life Ins. Co. v. Statham, 93 U. S. 24, 30, 31, 23 L.Ed. 789.

In Globe Mut. Life Ins. Co. v. Wolff, 95 U.S. 326, 333, 24 L.Ed. 387, the court said:

"The doctrine of waiver, as asserted against insurance companies to avoid the strict enforcement of conditions contained in their policies, is only another name for the doctrine of estoppel. It can only be invoked where the conduct of the companies has been such as to induce action in reliance upon it, and where it would operate as a fraud upon the assured if they were afterwards allowed to disavow their conduct and enforce the conditions."

To create a waiver there must be conduct creating estoppel or an agreement upon a consideration, Reynolds v. Detroit Fidelity & Surety Co. (C.C.A.) 19 F.(2d) 110. There was no evidence of any conduct of the defendant creating estoppel, nor consideration for an agreement to waive the time of payment. On the contrary, even if there was any such conduct prior to November 27, 1935, on which the plaintiff might rely, which we think there was not, Woods was informed on November 27 that Nute would not help him in case of a failure to pay future premiums within the days of grace allowed. Woods did not tender a check for the premium due January 30, 1936, until eleven days after the period of grace had expired on March 2 following, which the company refused to accept, and required a physical examination, which Woods had been advised by Nute on November 27, 1935, that with his present habits he could not pass, and which he never took.

The judgment of the District Court is affirmed with costs.