UNIVERSAL LIFE INSURANCE COMPANY *v.* BRYANT.

4-5247                                                        121 S. W. 2d 108.

Opinion delivered November 14, 1938.

*Jno. A. Hibbler,* for appellant.

*Coy M. Nixon,* for appellee.

BAKER, J. This appeal is from a judgment, for premiums paid, rendered in favor of Dr. Andrew J. Bryant, who sued the appellant, Universal Life Insurance Company, for a breach of the insurance contract. The policy was dated February 5, 1934. Premiums have been paid at a quarterly rate until the premium came due on May 5, 1936. Dr. Bryant sent his check to the Memphis office to pay that premium, though he might have paid it at Pine

Bluff or Little Rock, and after writing and posting his check he deposited money in the bank for its payment, but other checks reached the bank before the one payable to the life insurance company and that one was not honored, but was marked "insufficient funds." This check was drawn on or about the last day of grace, there being a grace period allowed by the insurance company of thirty-one days. Immediately after receipt of the check, which had been dishonored, the insurance company notified Dr. Bryant of the fact that his check had not been paid and that if he desired to continue his insurance he should send a cashier's check or money order with an application for reinstatement. The application for reinstatement should be accompanied by a health certificate from a doctor. The insured complied with the request, but the company, although it kept the check or money order, when it received it, notified Dr. Bryant that it desired to have him submit himself to another physician in order to determine if his health was satisfactory for reinstatement before it would act to reinstate him. The appellee refused to submit himself for another examination, but demanded the return of his money and it was sent back by the company's check in the proper amount. Immediately thereafter the appellee sued the appellant alleging the issuance of the policy, the payment of the premiums, the nonpayment of the check he had forwarded as the last or final premium and the remittance by money order with the proper health certificate; that he was delayed in the matter of reinstatement until his policy was canceled.

Material allegations of the complaint were denied. The company pleaded the failure to pay in accordance with the contract, and alleged that payment was made after the expiration of the grace period. The appellee founded his suit on the charge of the wrongful cancellation or lapsation of the policy. He offered proof that his payments were not made on the exact maturity dates, but were more or less irregular, sometimes reaching the office many days late; that the company had never taken advantage of such delays, but had uniformly and regularly accepted and received payments as they were tendered, requiring a health certificate only once prior to these last

negotiations. There was no substantial dispute of this evidence. It may be that for the reason that there had been changes in the offices of the defendant insurance company's local offices which had sometimes collected premiums by transfer of books or records to another local office having the right or authority to collect such premiums, the records of these local offices were not produced. But the records of the home office at Memphis were not introduced in evidence. There was a disputed matter as between the witnesses representing the appellant and those representing the appellee, in that particular, as covering part of the time in controversy. The defendant company, of course, if it kept proper records, had it within its power to show when such payments were made and might have introduced the records or proof of the local agency where collections were made, or even of the home office, as tending to show the exact dates or times when collections were received. For some reason it elected not to do so. So the appellant upon this appeal relies upon the express provisions of the contract to the effect that if payments be not made regularly at the end of each quarter, or within thirty-one days thereafter, that the poicy will automatically lapse. There was considerable testimony, but the foregoing is substantially the effect of all of it.

The case was tried before the court sitting as a jury and the motion for a new trial raises but one question and that is the sufficiency of the evidence to sustain the judgment of the trial court. The appellee had suggested, by motion filed in this court, that the appeal should be dismissed in accordance with Rule 9 of this court, for the reason that the judgment of the trial court has not been set forth in appellant's abstract, but the appellee graciously supplies that deficiency and the appeal must, therefore, be determined upon its merits.

Any facts necessary to a decision, not already stated, will be supplied in the conclusions we have reached. Both the appellant and the appellee were satisfied, in this case, to rely upon the sworn statements of witnesses who presumably knew the facts they related. Dr. Bryant offered no checks issued by him, or receipts received by him,

stated that his policy and receipts had been stolen or taken away from his office in his absence. His testimony was directed to the sole issue that his payments were made with some degree of irregularity, but approximately at or about the close of the grace period, though frequently somewhat later. They had always been accepted; that a controversy had arisen, however, in which the company had demanded that he pay more money than his insurance contract called for on account of an alleged misstatement of age; that he had refused to pay and the company was anxious for that reason to rid itself of the risk upon his life. Some evidence was offered that the preceding quarterly payment, had been made considerably late. The appellant explained that receipts were not given when checks were received, even if received on time, until there was a return from the check showing that it had been cashed or honored. Bryant testified that after the company had lapsed his policy on this last occasion and demanded a remittance by money order and a certificate of good health, in compliance with the request, he had sent the money, had been examined by a physician and forwarded a certificate showing that he was in good health, and then offered the physician, one of the examining physicians of the appellant company, who corroborated this statement. The physician, however, on cross-examination, indicated that, as he recollected Dr. Bryant's condition, he had been sick some months before. The appellant company now contends that it was on account of his former illness that it required a new examination by another physician.

The foregoing constitutes the details of the entire controversy, stated as fully as we may without attempting to copy any of the testimony.

The court rendered judgment for $226.80, with interest in the sum of $23.66, making a total amount of $250.46. There is no contention that this sum is not accurate, if the plaintiff was entitled to recover at all.

Of course, this finding on the part of the court is a finding of all the facts in the most favorable light for the appellee to support the judgment rendered in his favor. This means that if the conduct of the insurance company

had been such that the insured had a right to rely on the former course of conduct between the parties, that he could pay after the actual maturity date, or expiration of the days of grace, then such conduct became and was in law a waiver of that provision of the contract fixing an actual limit within which the payment might be made, but the insured had a right to expect a continuation of the favors he had received, at least, until there was due and positive notice that they would no longer be extended.

A similar case to the one under consideration was recently decided by this court. *American National Ins. Co.* v. *Hamilton,* 192 Ark. 765, 94 S. W. 2d 710.

The difference in the case under discussion and the case just cited is that in the cited case the insurance may be said to have been a monthly term policy giving the right to terminate at the end of any term, or at any time be returning the unearned premium, or portion thereof. Not so in the instant case, which furnishes a somewhat typical anticipatory breach as discussed in the case of *Jefferson Standard Life Insurance Company* v. *Slaughter,* 190 Ark. 402, 79 S. W. 2d 58.

In that case we set forth not only what may be deemed and what is frequently treated as an anticipatory breach of contract, but also the holdings of this court in regard to proper measure of damages. One of the first cases upon that matter was the *Mutual Relief Assoc.* v. *Ray,* 173 Ark. 9, 292 S. W. 396.

The cases in no manner impair the insurance contracts, but in them the courts adopt the method employed by the parties in the enforcement of these provisions.

So in this case the decision and judgment of the trial court having the same effect as the jury trial upon disputed questions of facts, all facts must be and are determined in the light most favorable to support the trial court's judgment. That being true, there is no error, and the judgment is affirmed.