MARGUERITE BERTSCH, PLAINTIFF-APPELLANT, v. SMALL INVESTMENTS, INC., A CORPORATION OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued April 10, 1950—Decided May 15, 1950.

*Mr. Isador Haber* argued the cause for appellant.

*Mr. Sylvan S. Cohen* argued the cause for respondent (*Mr. Sam Milberg,* on the brief).

The opinion of the court was delivered by

WACHENFELD, J. The appellant sued to recover the cost of repairing and reconstructing a parapet wall on the roof of a building at 3501 Hudson Boulevard, Union City. The property was the subject of a contract for sale between the parties made in May, 1948. The purchase price was $35,500 and the contract provided the conveyance was to be subject to "tenement house violations, excepting those of a structural nature."

. When title closed on July 15, 1948, the Board of Tenement House Supervision report had not yet been received so it was agreed to close title with the provisions as to the tenement house violations inserted in the deed and a separate written agreement was entered into stipulating the provisions as to the structural violations should survive the contract. Afterward, the appellant received a report from the Board of Tenement House Supervision specifying "parapet on roof out of plumb; level up same right street to yard court."

Respondent was informed of the report and asked to make the repairs on the ground that the condition was a tenement

·house violation of a structural nature. It refused to repair the parapet and was subsequently advised an agreement had been entered into between the appellant and a contractor to replace the wall for the sum of $6,800. The respondent still denied liability and the appellant brought this action to recover the cost of the work done.

The respondent asserts the work in question was not a repair of a structural tenement house violation but was occasioned by age and use of the building and came within the provision of the contract that the property was to be sold "as is." It contends further that, even had the condition of the parapet constituted such a violation, the proper remedy would have been rescission of the contract since no warranty of conformance to the provisions of the Tenement House Act was expressed or implied in the deed. No attempt was made to rescind the contract.

The appellant produced as a witness the chief inspector of the Board of Tenement House Supervision, who testified the replacing of the wall was a "structural job" but admitted the regulations of the Board made no provision relating to parapets. Others of the appellant's witnesses testified that the rebuilding was a "structural job" or "structural building work." An architect with years of experience testified to the contrary for the defendant.

The court below sat without a jury and, in deciding the issue, said:

"I find that the said condition of the wall did not constitute a tenement house violation of a structural nature, and not one which was a structural violation in the contemplation of the parties. The plaintiff did not move to rescind the contract, but instead elected to retain the property, after ascertaining from the Board of Tenement House Supervision that there was a violation which she deemed to be a structural one. There was no agreement between the parties that in the event there was a structural violation she was to retain the property and defendant was to be responsible for the cost of the repairs."

The trial judge also found the appellant entered into the contract with knowledge as to the physical condition of the

building and that the parapet wall was in the same condition when the deed was delivered as when the contract was signed.

Judgment accordingly was entered for the defendant. This appeal was then taken to the Appellate Division and certified here on our own motion.

Our first inquiry is directed to the question whether the repair was part of ordinary care and maintenance of the building or was necessitated by a structural violation of the Tenement House Act, *R. S. Title 55, Subtitle* 1.

A qualified architect with fifteen years of experience, during which he was engaged in designing and supervising the actual construction work of commercial and industrial buildings and multiple dwellings, testified clearly and unequivocally that a parapet wall was not "of a structural nature." His testimony is the only evidence in the record of what is comprehended or meant by the word "structural" as here used. In reply to an inquiry as to what portion of the building was structural, he answered: "If the exterior walls were bearing, I would say the exterior walls; any bearing walls, partitions bearing on the beams, transmitting the load to the footings, the foundations. Those elements are structural. * * * Anything that would tend to upset the equilibrium of the building would be a structural feature." Further indicating a parapet wall was not within this classification, he described it as "a dwarf wall or an enclosure wall that normally goes around the perimeter of a structure. Usually used for either protection or in ancient times as a guard against siege. A parapet is just a projection above the roof which can take the form of a rail, it could be a brick wall, it could be most any material."

The record contains no other proof in this respect except for the testimony of the inspectors from the Board of Tenement House Supervision. Although they testified the repair was, in their opinion, a structural job, it was admitted, as we have already noted, there was no provision of the Tenement House Act concerning parapet walls.

In *Pross v. Excelsior Cleaning & Dyeing Co.*, 110 *Misc.* 195, 179 *N. Y. S.* 176 (1919), the court held structural changes meant such changes as affect a vital or substantial portion of the premises, as would change its characteristic appearance, the fundamental purpose of the erection or the uses contemplated, or a change of such a nature as would affect the very realty itself.

Where repairs consisted of taking down a rear wall and replacing it with a new one, rebuilding a part of the side walls and anchoring the front wall to the floor beams with star anchors to keep it from bulging, the court held these changes were structural in their nature. *Warrin v. Haverly,* 159 *App. Div.* 840, 144 *N. Y. S.* 1004 (1913).

In *Robinson v. Globe Indemnity Co.*, 251 *App. Div.* 288, 296 *N. Y. S.* 257 (1937), where there were extensive alterations, including the installation of kitchen and bathroom equipment consisting of two bath tubs, two toilets, two wash basins and two kitchen ranges, two sinks, two wash tubs and dish closets and the installation of a vent to carry off foul air, the court held the alterations were "not such as were ordinarily necessary to the care and maintenance of the premises" and decided they were structural in character.

A structural change has been construed to mean such a change as to affect a vital and substantial portion of the premises or a change of its characteristic appearance, the fundamental purpose of its creation or the uses contemplated, or a change of such a nature as would affect the realty itself, extraordinary in scope and effect and unusual in expenditure. *Plaza Amusement Co. v. Rothenberg,* 159 *Miss.* 800, 131 *So.* 350 (1930). This case is cited in 60 *C. J.* 665 and its context given as the definition of a structural change.

All these cases involved extensive alterations which materially affected the basic structure of the buildings, their appearance and the use that could be made of them. Lesser alterations, even though varying the existing use to some extent and resulting in a notable change in the frontal appearance of a building, have nevertheless been held not structural

in nature. Thus, in *Paye v. City of Grosse Pointe,* 279 *Mich.* 254, 271 *N. W.* 826 (1937), a building which had formerly consisted of two stores on the ground floor was altered, by removal of the partition wall, to comprise one large store. The owner sought a permit to remodel the building so as to provide a plate glass front with a single center door replacing the two entrances then existing. The court, finding this not a structural change within the prohibition of the local zoning ordinance, said:

"The proposed alteration does not change the form or character of the building, its general appearance, or structural quality; it merely substitutes new windows and doors for the old ones and the size of the store is not enlarged. It will perhaps be made more modern and attractive. In our opinion, the installation of a new front is not a structural alteration within the meaning of the ordinance."

Here, we are concerned with no such extensive remodelling or reconstruction. The existence or condition of the parapet wall did not affect the fundamental character of the building nor the use for which it was designed. Its removal or replacement could affect only slightly the general appearance of the edifice. In neither respect was the alteration or repair remotely comparable in scope to that held non-structural in the *Paye case, supra.*

These legal constructions of the term "structural changes" and equivalent words are even more liberal and inclusive than that given by the expert offered on behalf of the respondent. The issue thus presented is one of fact and the evidence amply justifies the conclusion by the court below that the condition of the parapet wall was not a Tenement House Act violation of a structural nature. Our review of the record leads us to the same determination.

The appellant strenuously asserts her right to litigate the issue raised here without the necessity of rescinding the contract. Rescission, she contends, is based upon fraud or mutual mistake and is therefore not the proper remedy where she is seeking merely the equivalent of an equitable action of spe-

cific performance with an abatement for the cost of repairing or removing the violations. In support of this argument she relies on *Triplett v. Ivins,* 93 *N. J. Eq.* 202 (*E. & A.* 1921), and *Levine v. Lafayette Bldg. Corp.,* 103 *N. J. Eq.* 121 (*Ch.* 1928); reversed, 105 *N. J. Eq.* 532 (*E. & A.* 1929).

The respondent denies that the language of the agreement would permit specific performance with abatement and points out that the contract contained no representation, warranty or covenant that the premises were clear of structural violations. It stresses the admitted fact that a bargain and sale deed was specified and the contract had typed in it: "* * * it being distinctly understood by and between the parties hereto that the premises are being sold 'as is.' "

The issue thus presented relates to the remedy to be pursued. Even if we were to decide, which we do not, that the decision of the court below, in this respect, was error, no relief could be granted the appellant in view of the determination on the factual issue that the violation was not structural within the meaning of the contract.

The judgment below is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, OLIPHANT, WACHENFELD and BURLING—5.

*For reversal*—Justice HEHER—1.