241 P.2d 779

**FRIEDMAN et ux. v. LE NOIR et al.**
**No. 5351.**

Supreme Court of Arizona.
March 10, 1952.

Stahl & Murphy, Brice I. Bishop, all of Phoenix, for appellants.

Herbert Watson, of Phoenix, for appellees.

PHELPS, Justice.

This is an appeal from a judgment of the superior court of Maricopa County.

The facts are that on August 23, 1947, lessees-appellants herein leased from lessors-appellees by a contract in writing what is known as the Silver Bell Motor Court, located in Phoenix, for a period of 10 years beginning on September 1, 1947, at an aggregate rental of $78,000, payable as therein prescribed.

Among other provisions of the lease it was agreed therein that the lessees were to maintain and keep in good repair (not including major structural alterations) the entire premises and to keep the same insured in the sum of $25,000.

The Silver Bell Motor Court is an old structure and the plumbing installation had no vents or traps to take care of wastes and gaseous odors arising from sewer lines. In April 1948 the lessees performed certain work upon the sewer line to take care of the sewage from the cabins by adding thereto seven or eight vents and traps required by the city to be installed at connections or outlets from sinks, bath tubs and drains located in the cabins.

In June 1949 the gas line leading from the meter along the side of the cabins had become decayed and gas was escaping therefrom. The meter was removed by someone unknown to lessees but they were informed that it was removed by the Central Arizona Light & Power Company. Mr. Friedman was endeavoring to determine where the leak in the gas line was located when the city plumbing inspector came to the premises and ordered that whatever was done in connection with it must conform to plumbing regulations and be done by a licensed plumber. He found by inspection that the gas line was badly decomposed and that it was only a three-quarter inch pipe while the city requirements were that such pipe should be 1½ inches in diameter and that a different type of pipe should be used than that in use at the time. The plumbing inspector required the old pipe to be replaced with new pipe to meet city specifications.

The lessees claim the cost to them in doing the above work was $1133.00 and sued lessors for that amount, claiming that it was the duty of the lessors to make said repairs or alterations. At the close of the entire case the court granted an instructed verdict for lessors herein and entered judgment thereon. Lessees assign this action of the court as error upon the alleged ground that lessees, as a matter of law, were entitled to judgment against lessors for the alterations made.

We believe it to be generally the law that in the absence of an agreement to the contrary the lessor is not obligated to make repairs upon demised premises or to keep them in repair during the term of the lease. Annotation 33 A.L.R. 530; 32 Am. Jur., Landlord and Tenant, Sec. 657, and cases cited. In the instant case as above stated, the lease expressly provides that the lessees shall maintain and keep in good

repair (not including major structural alterations) the entire premises.

The first question to determine then is: Was the work done by lessees a repair or an alteration? Second, was it a major structural alteration? And third, was the alteration required by municipal authority of such a character as to render the lessors liable for it?

▆▆ Answering the first query, we are of the opinion that in neither instance was the work done of such a character as to fall within the definition of "repairs". It did not amount to a restoration of some portion of the premises after decay, waste, or injury, that is, restoring to a sound state whatever had been partially destroyed upon the premises. These are the essential elements of "repair". Ledbetter v. City of Great Falls, 123 Mont. 270, 213 P.2d 246, 13 A.L.R.2d 903. It was more in the nature of changing a condition or replacing it with new or different material. In the sewer work new vents and traps were added to the sewer line and the work done in connection with the gas line was a replacement of a portion thereof with pipe of a different type and of twice the size in diameter of the gas line previously in use. We therefore believe that the work done was an alteration and not a repair.

▆ Answering the next question: Was the work done a "major structural alteration?" We are of the view that although it was an alteration it was not a structural alteration and certainly not a major one. In Bertsch v. Small Investments, 4 N.J. 520, 73 A.2d 346, it was held that " 'Structural change' within meaning of contract for sale of realty means such a change as affects a vital and substantial portion of the premises or a change of its characteristic appearance, the fundamental purpose of its creation, or the uses contemplated, or a change of such a nature as would affect the realty itself, extraordinary in scope and effect and unusual in its expenditure." This language has been approved by the courts in a number of states.

From the above decision it will be seen that the work lessees did upon the premises involved was not a structural alteration. If it could be said that it did fall within the definition of repairs, i. e., that it consisted of a restoration to a sound state whatever had been partially destroyed upon the premises, it could hardly be said to be a major structural repair or alteration.

The only question remaining for our consideration is whether, under the terms of the lease, the governmental requirements of the city of Phoenix placed upon lessors the duty to install vents and traps on the sewer line at each of the outlets and to replace the decayed gas pipe line with a larger and different type of pipe at a cost to them of several hundred dollars in view of the covenant contained in the lease that lessees should "maintain and keep in good repair (not including major structural alterations) the entire premises."

The word "maintain" as used in the lease cannot be ignored in arriving at the intent of the parties at the time the lease was executed. The language used was "maintain and repair". The lessees were not only to "repair" the premises but they were, in addition thereto, required to "maintain" the entire premises except as to "major structural alterations." It certainly included minor structural alterations and it included all repairs. The lease agreement was executed by the parties at a time when the ordinance under which the plumbing inspector acted was in full force and effect and the ordinance therefore became a part of the lease agreement, as much so as if written therein. Annotation 110 A.L.R. 1048; Progress Amusement Co. v. Baker, 106 Wash. 64, 179 P. 81. Both lessors and lessees are presumed to have known of the existence of such ordinance at the time the lease was executed.

It follows that in the absence of an express covenant in the lease imposing the duty upon the lessors to make the repairs or alterations made by the lessees under governmental compulsion, the general covenant that the lessees should "maintain and keep in good repair" the premises involved includes repairs made compulsory by municipal ordinance.

Judgment of the trial court affirmed.

UDALL, C. J., and STANFORD, DE CONCINI and LA PRADE, JJ., concurring.