244 P.2d 1160

**GRIZZLE et ux. v. RUNBECK et ux.**

**No. 5519.**

Supreme Court of Arizona.

June 2, 1952.

Rehearing Denied July 1, 1952.

Milburn N. Cooper, of Phoenix, for appellants.

E. R. Thurman, of Phoenix, for appellees.

STANFORD, Justice.

Appellees, Anton Runbeck and wife, brought this action against James M. Grizzle and wife, appellants, in the lower court

to recover damages arising out of the alleged breach of a lease. Trial was had before the court sitting without a jury and judgment rendered in favor of appellees in the sum of $4,014. Appellants, upon the denial of their motion for new trial, now prosecute this appeal.

This case involves two separate leases, one a sublease, on the Blue Palm Trailer Court in Phoenix, Arizona. In April of 1947, the owners of the premises, Mr. and Mrs. William C. McClure, leased the property for 25 years to a Mr. and Mrs. Jacobson. A dwelling house was on the property at the time of this lease but the property was otherwise unimproved. The Jacobsons made the necessary improvements to convert the property into a trailer court, which they named the Blue Palm Trailer Court, and then, in November of 1947, assigned the lease to the Grizzles, appellants herein. We shall hereafter refer to the original lease between the owners and the Jacobsons, which the Jacobsons assigned to the Grizzles, as the "basic lease". The Grizzles operated the trailer court until March 10, 1948, when they subleased the property for five years to the Runbecks, appellees herein. This lease shall hereinafter be referred to as the "sublease". On the execution of the sublease, the Runbecks paid the Grizzles $4,250, representing the first month's and the last nine months' rent, and agreed to pay $425 on or before the 10th day of each month as the monthly rent. Pursuant to an agreement entered into at the time of the execution of the sublease, the Grizzles managed the court for the Runbecks until the latter part of September, 1948, when the Runbecks assumed full management of the court.

In November of 1949, the Grizzles gave written notice to the Runbecks that they were in default under the terms of the sublease for failure to pay the rent and demanded possession of the premises, whereupon the Runbecks paid the rent and remained in possession of the court. In February of 1950, the Runbecks informed the Grizzles that they would not pay any more rent until the Grizzles reimbursed them for certain expenditures they had made in keeping the court in repair and in operating condition. The Grizzles then gave the Runbecks written notice that they had defaulted in the payment of the rent and demanded possession of the court. Upon the Runbecks refusal to pay the rent, the Grizzles filed an action in the Superior Court of Maricopa County wherein they demanded possession of the premises and the accrued rent. The Runbecks did not contest the action but instead abandoned and gave up possession of the premises to the Grizzles on March 7, 1950. The Runbecks thereafter filed this suit against the Grizzles for damages.

The Runbecks complaint alleged that the Grizzles did not keep the premises in repair as they covenanted so to do, whereby it was necessary for them to expend $1,245.-52 for labor, repairs and services in order

to carry on with the operation of the court. Part of these alleged expenditures were incurred while the Grizzles were managing the court for the Runbecks, and the remainder after the Runbecks had assumed full control. The complaint contained a prayer for $6,588 damages for loss of prospective profits; $2,000 damages for the loss of the leasehold interest; $30 expense incident to the forced removal; $1,245.52 for the aforementioned expenditures; and, $3,825 damages for the loss of their last nine months' rent which they had paid in advance, a total sum of $13,688.52. The lower court, sitting without a jury, awarded the Runbecks $4,014 damages.

As the lower court was not requested to make findings of fact and conclusions of law, and none were made, this court is left to conjecture as to the grounds or theory upon which the lower court based its judgment. However, as the briefs deal only with the issues of duty to repair and the right to recover the advanced rent, we shall limit our review to those issues.

■ We must start with the assumption that the lower court made all necessary findings of fact essential to support the judgment. In re Estate of Brashear, 54 Ariz. 430, 96 P.2d 747; Roberts v. Spray, 71 Ariz. 60, 223 P.2d 808. Therefore, if there is any reasonable evidence to support the judgment it must be affirmed on appeal. Kubby v. Hammond, 68 Ariz. 17, 198 P.2d 134.

■ We shall first consider the duty to repair. It is well settled that in the absence of an agreement to the contrary, the landlord is not obligated to make repairs upon the demised premises during the term either to put the premises in repair or to keep them in such condition. 32 Am.Jur., Landlord and Tenant, Sec. 657, p. 521; Friedman v. LeNoir, 73 Ariz. 333, 241 P. 2d 779. It is also the rule that in the absence of an agreement between the parties, there is no obligation on the part of the lessor to pay the lessee for improvements erected by the latter upon the demised premises, even though the improvements are such that by reason of their annexation to the freehold they become a part of the realty and cannot be removed by the lessee. 32 Am.Jur., Landlord and Tenant, Sec. 659, p. 524. The Runbecks contend that by the terms of the basic lease the Grizzles were obligated to make repairs on the property and that the sublease incorporates those provisions thereby obligating the Grizzles to make repairs under the sublease. The lower court must necessarily have found in favor of the Runbecks' interpretation of the lease, therefore, if there is any reasonable evidence to sustain that finding the judgment will not be disturbed on that ground. We shall refer to the terms of the leases to determine the soundness of the finding.

We quote portions to the sublease:
"The Lessees (Runbecks) understand

that this is a sublease and that this lease is subject to the terms and operation of a basic lease dated April 25, 1947, * * *.

"That the Lessors (Grizzles) herein shall promptly comply with all of the terms of said basic lease from McClure to Jacobson, to the end that the Lessees herein shall not be penalized for failure of compliance with said basic lease; (parentheses ours).

* * * * * *

"That should the Lessors herein fail, refuse or neglect to promptly comply with all of the terms of said basic lease from McClure to Jacobson, the Lessees herein shall have the right and privilege of complying with the terms of said basic lease for the Lessors and charge to the Lessors as a credit or offset against the rental hereunder due from Lessees to Lessors any funds or expenses to which these Lessees have expended for the benefit of the Lessors."

We now quote from the basic lease:

"The Lessees agree that during the term of this lease, or any extension thereof, that they will keep said premises and the buildings and improvements thereon, in as good repair as the same are at the commencement of this lease, reasonable wear and tear and damage by fire or other unavoidable casualty excepted * * * and that they will care for said premises and the improvements thereon in as good

manner as the prudent owner thereof would, which will include proper irrigation of the trees and growing shrubs thereon.

* * * * * *

" * * * Lessees shall also pay any and all bills in connection with the operation of these premises which include water, gas and lights or other utilities, services or service."

■ The Runbecks contend that the above-quoted portions of the leases, when read together, impose the duty to repair on the Grizzles. The Grizzles contend that the following portion of the sublease is controlling and that it imposes the duty to keep the premises in repair on the Runbecks.

"*The Lessees agree to pay any and all bills in connection with the operation of said property* during the entire term of this Lease, and to *care for said property and the improvements thereon in the same manner as would a prudent owner thereof*". (Italics ours.)

We do not believe there is any reasonable evidence to support a finding that the Grizzles owed the duty to repair. The portion of the sublease quoted above specifically requires the Runbecks to pay any and all bills in connection with the operation of the court. If that portion of the sublease is to have any effect it must mean exactly what it says, that the Runbecks are to pay all operational expenses. We do not believe the portion of the sublease which refers to the Grizzles' obligations under the basic

lease imposes the duty to repair on the Grizzles. Without an express agreement to the contrary, the duty to repair rests on the tenant, not the landlord. It must also be remembered that at the time of the execution of the basic lease the property was unimproved, but when the sublease was executed the property was improved and was a going business.

When the Runbecks refused to pay the rent for February, 1950, the Grizzles had the right to declare the lease forfeited, demand possession and retain the advanced rent. The sublease expressly provides that the advanced rent should be treated as liquidated damages in the event of a default under the lease. We quote from the sublease:

"* * * and that upon the non-payment of the whole or any portion of the said rent at the time when the same is above promised to be paid, or upon the failure of the Lessees to otherwise comply with the terms of this lease, the Lessors may, at their election, upon a 10 day written notice, declare this lease at an end and recover possession as if the same was held by forcible detainer and retain all rental paid in advance hereunder, as liquidated damages."

Section 27–1215, A.C.A.1939, provides in part:

"(a) Whenever a tenant shall neglect or refuse to pay his rent when due and in arrears for five (5) days, or whenever any tenant shall violate any of the provisions of his lease, the landlord or person to whom said rent is due, or his agent, may re-enter and take possession, or, without any formal demand or re-entry, commence an action for the recovery of the possession of said premises."

Since the Runbecks did not have the right to demand credit from the Grizzles for the expenditures they had made in keeping the business operating, they violated the terms of the lease when they refused to pay the rent when due. They cannot now assert constructive eviction when they abandoned the premises without just cause. There is no evidence to support the finding that the Runbecks were constructively evicted and therefore entitled to recover their advanced rent.

Judgment reversed.

UDALL, C. J., and PHELPS, DE CONCINI, and LA PRADE, JJ., concurring.