353 P.2d 1029

Kenneth HAGIN and Catherine Hagin, husband and wife, Appellants,

v.

FIREMAN'S FUND INSURANCE COMPANY, a corporation, Appellee.

No. 6506.

Supreme Court of Arizona.

July 8, 1960.

Paul H. Primock, Shute & Elsing, Phoenix, for appellants.

Moore & Romley and John H. Killingsworth, Phoenix, for appellee.

PHELPS, Justice.

This is an appeal from a judgment in favor of the defendant-appellee, Fireman's Fund Insurance Company. The suit was brought by Kenneth Hagin and Catherine Hagin, husband and wife, to recover for the loss by theft of certain jewelry allegedly covered by a contract of insurance with the appellee. The appellants will hereinafter be referred to as plaintiffs or where particularity is desired as Kenneth Hagin or Catherine Hagin, and the appellee will be referred to as defendant.

The facts stated in a light most favorable to sustaining the judgment below, are as follows: The contract of insurance upon which this action was based is a personal property floater covering certain clothing, household effects and jewelry, among other kinds of loss, loss by theft. The policy issued by the Betts Insurance Agency on behalf of the defendant company was written on the installment plan providing that the entire premium would not have to be paid at the beginning of the three-year period. With the exception of a slight additional fee charged by defendant for the installment privilege, the policy provided for payment in three premiums of equal amount; the first premium being due immediately and the remaining two on successive anniversary dates from the time the policy issued.

The cancellation clause of the policy provided that:

"This policy may be cancelled by the Company by mailing to the Assured at the address shown in this policy or last known address written notice stating when not less than five (5) days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either

by the Assured or by the Company shall be equivalent to mailing."

With respect to return of unearned premiums in the hands of the company in the event the company cancelled, the policy provided that:

" * * * If the Company cancels, earned premiums shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected and, if not then made, shall be made as soon as practicable after cancellation becomes effective. * * * "

The Betts Insurance Agency had for some ten to fifteen years written insurance for plaintiffs on policies of a number of different insurance companies covering both domestic and business interests. During this period a custom of dealing developed between them whereby the Betts agency habitually accepted delinquent payments of premiums on policies sold to plaintiffs. It was in this climate of dealing that the policy in the instant case was issued.

The first two premiums paid by plaintiffs were delinquent to the extent that the first was paid eleven months after it was due. And the third and final premium which is of vital importance in this case was not paid when mature. But insofar as this policy is concerned, the Betts agency was obligated to remit premiums to defendant within sixty days from the date they were due; and. there was no showing that defendant was aware of this practice of delinquent dealing between Betts and plaintiffs.

At the time plaintiffs' jewelry was stolen from their home, they had separated and a divorce action was pending between them. Kenneth Hagin had established his residence at a nearby hotel. And although he had been engaged in farming in the State of Texas for nearly two months immediately prior thereto, he had returned to Phoenix two or three days before the theft occurred.

During the life of the policy the plaintiffs had lost a ring and the defendant in due course paid them $375 for the loss. Subsequently, however, when it was found the Betts agency was informed that when the divorce action was settled and it was determined which of the plaintiffs owed the debt, a refund would be made.

On May 25, 1954, the Betts agency mailed a letter to Catherine Hagin at the address shown in the policy. It informed her that the final premium on the policy in question would be due on June 14th, and cautioned that the agency would discontinue the coverage unless the premium was timely paid. It was stipulated at the pretrial conference that this letter was received by the addressee.

Since the premium had not been paid, the Betts agency mailed a notice of can-

cellation of the policy to plaintiffs at the same address on June 14th. By the terms of the notice the plaintiffs' coverage was to end on June 20th, thereby giving a five-day period in which to secure other insurance. Included in the notice of cancellation was a provision that:

"Excess of paid premium above the pro rata premium for the expired time, if any, and if not tendered herewith, will be refunded on demand. * * *"

At the time cancellation of the policy became effective there remained in the hands of defendant an unearned premium in the amount of $12.53. This amount was not returned with the notice of cancellation but was tendered by mail in December of 1954, after the complaint in this action had been filed.

On the evening of June 24, 1954, the plaintiffs suffered a loss by burglary of jewelry valued at $3,530, and specifically covered by the policy here under consideration. Having been denied the privilege of filing proof of loss, the plaintiffs instituted the present action.

The plaintiffs make only one assignment of error. This assignment is supported by four propositions of law, three of which we shall discuss in the order of their presentation. The fourth proposition, dealing with the apparent authority of the Betts agency to accept late premium payments, need not be discussed for as we shall presently develop, even assuming that such authority *did* exist, the judgment of the lower court must still be affirmed.

It is a general rule that where a custom of dealing develops between an insurer and the insured whereby the policy provision requiring prompt payment of premiums is not enforced, the insurer is precluded from insisting upon strict compliance with the terms of the policy providing for payment of premiums on a date certain without first giving the insured notice thereof within a reasonable time previous thereto. The cases adhering to this rule do so either on the basis of waiver or estoppel, but the result is the same. See for example Forbes v. New England Mut. Life Ins. Co., 1 Cir., 92 F.2d 806; Vinther v. Sunset Mut. Life Ins. Co., 11 Cal.App. 2d 118, 53 P.2d 182; Universal Life Ins. Co. v. Bryant, 196 Ark. 1143, 121 S.W.2d 108; Gleed v. Lincoln Nat. Life Ins. Co., 65 Cal.App.2d 213, 150 P.2d 484; Hebert v. Woodruff's Ins. Co., La.App., 19 So.2d 290; Haggerty v. Metropolitan Life Ins. Co., 131 Pa.Super. 87, 198 A. 822; Bryant v. Continental Life Ins. Co., 168 Va. 585, 192 S.E. 581; Blomquist v. Grays Harbor County Medical Serv. Corp., 48 Wash.2d 718, 296 P.2d 319; Inter-Ocean Insurance Co. v. Banks, 268 Ala. 25, 104 So.2d 836.

If we assume, without deciding as heretofore indicated, the apparent authority of the Betts agency to accept delinquent

payments, there can be no question that a habit or course of dealing had developed between the parties litigant requiring defendant to give notice within a reasonable time before insisting that the policy with respect to the payment of premiums be strictly adhered to. Our inquiry must therefore concern the sufficiency of the letter of May 25, 1954, as such notice. It is the plaintiffs' position that the notice required by the general rule is that the knowledge therein contained actually be brought to the mind of the intended receiver. But we think the better view is expressed in 39 American Jurisprudence, 238, Notice and Notices Section 12, stated as follows:

"Means of knowledge and knowledge itself are, in legal effect, the same thing where there is enough to put a party on inquiry. Knowledge which one has or ought to have under the circumstances is imputed to him. * * * In other words, whatever fairly puts a person on inquiry is sufficient notice where the means of knowledge are at hand; and if he omits to inquire, he is then chargeable with all the facts which, by a proper inquiry, he might have ascertained. A person has no right to shut his eyes or his ears to avoid information, and then say that he had no notice; he does wrong not to heed the 'signs and signals' seen by him. * * *"

The letter mailed to Catherine Hagin on May 25, 1954, placed the means at plaintiffs' disposal of ascertaining that the custom of delinquent dealing would no longer be tolerated. There is no dispute that this letter was received, and absent evidence to the contrary, it is presumed that it was received in due course of the mail. But according to the testimony of the plaintiffs, mail was allowed to accumulate in their home for certain periods of time without being opened and it is supposed that this letter was included in such an accumulation. In any event, plaintiffs testified that neither of them saw the letter until after the loss in question occurred. But certainly under these circumstances, where all that plaintiffs had to do was to open their mail, they are charged with constructive notice of the knowledge which this letter attempted to convey. And where, as here, a cause is tried to the court and no findings of fact are filed, this Court on appeal will presume that the trial court found every fact necessary to support the judgment. United Bank & Trust Co. v. Washburn & Condon, 37 Ariz. 223, 292 P. 1025; Grizzle v. Runbeck, 74 Ariz. 92, 244 P.2d 1160. Thus we must assume that the lower court found as a fact that the notice to the Hagins insisting upon payment of the premiums on the date specified, was within a reasonable time

Plaintiffs make much of the fact that this letter was addressed to Catherine Hagin

and not to Kenneth. There is nothing in the evidence to explain why this procedure was followed. But the insureds were husband and wife; their interests under the policy were the same; and the Betts agency had no way of knowing the Hagins' habit of allowing their unopened mail to accumulate. Under these circumstances we think the notice to Catherine Hagin is fairly imputed to Kenneth Hagin.

It is next asserted by the plaintiffs that since Carl Betts of the Betts agency had heard gossip or rumors that the Hagins had separated, that it was the duty of the defendant to ascertain and use the new address of Kenneth Hagin in mailing notices to plaintiffs. As heretofore indicated, the provision in the policy relating to cancellation, required the company to mail written notice stating when, not less than five days thereafter, cancellation was to become effective. It provided that such notice should be mailed to the address shown in the policy or the last known address of the insureds. There is no question that both the letter reinstating the time requirement as to payment of premiums, and the final notice of cancellation were mailed to the address shown in the policy.

The only indication which defendant had that the Hagins were having marital difficulties and that they might be separated was a rumor heard by Carl Betts. American Jurisprudence, 39 Am.Jur. 242, Notice and Notices, Section 16, very succinctly states the principle governing this problem, as follows:

"Mere rumors are neither notice nor the groundwork for the required inquiry which will charge a person with knowledge of what inquiry would have revealed. It is also a settled principle that the vague reports of, or information given by, strangers are insufficient to operate as notice. * * *

■ The final issue to be discussed is whether the defendant was required to return unearned premiums to plaintiffs before it could effect a cancellation of the policy. The policy provided that unearned premiums in the hands of the company would be paid at the time cancellation became effective or as soon thereafter as practicable. The notice of cancellation mailed to plaintiffs, however, contained a statement that if the unearned premiums were not tendered therewith (and they were not) that they would be refunded upon demand of the insured. Plaintiffs' argument suggests that if an unearned premium is not returned at the time of cancellation of the policy, then it remains in effect until the unearned premium is consumed.

Policy provisions with respect to cancellation and return of unearned premiums in the hands of the insurer have been exhaustively categorized by the eminent authors of American Law Reports Anno-

tated. See, 16 A.L.R.2d 1182–1208. At page 1204 of that same annotation, the authors in dealing with a provision like the one presently being examined, said:

"The policy clause providing for cancellation by an insurer by mailing written notice to the named insured at the address shown in the policy stating when, not less than five days thereafter, such cancellation shall be effected, and providing further that, if the insurer cancels, earned premiums shall be computed pro rata, and 'premium adjustment may be made at the time cancellation is effected, and if not then made shall be made as soon as practicable after cancellation becomes effective,' was born after years of experience and divergent constructions of the older clauses, according to the statement of the court in Wallace v. State Farm Mut. Auto Ins. Co. (1949) 187 Tenn. 692, 216 S.W.2d 697.

*"Under this clause it has been consistently held that a refund or tender of the unearned premium is not a condition precedent to effective cancellation."* [Emphasis added.]

We thus adopt the view of the court in Medford v. Pacific Nat. Fire Ins. Co., 189 Or. 617, 219 P.2d 142, 222 P.2d 407, 16 A.L.R.2d 1181, that this kind of policy provision for premium adjustment, relates to matters subsequent to effective cancella-

tion and therefore cannot affect the sufficiency of the notice of cancellation.

For the foregoing reasons, the judgment is affirmed.

STRUCKMEYER, C. J., and JOHNSON, BERNSTEIN and UDALL, JJ., concur.